EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Rosa Maisonet<br><br>    Recurrido<br><br>       v.<br><br>Administración de Servicios Médicos de Puerto Rico (ASEM)<br><br>    Peticionarios | Certiorari<br><br>2015 TSPR 19<br><br>192 DPR ____ |

Número del Caso: CC-2013-1104

Fecha: 27 de febrero de 2015

Tribunal de Apelaciones:

    Región Judicial de San Juan, Panel III

Abogado de la Parte Peticionaria:

    Lcdo. Miguel A. Rangel Rosas

Abogada de la Parte Recurrida:

    Lcdo. Iván Garau Díaz

Materia: Derecho Laboral – Despido por acto constitutivo de hostigamiento sexual contra empleada; Ley 17 de 1988 – adopción de política institucional más rigurosa para combatir el hostigamiento sexual en el taller de trabajo.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Luis Rosa Maisonet | | *Certiorari* |
|---|---|---|
| Recurrido | | |
| v. | CC-2013-1104 | |
| Administración de Servicios Médicos de Puerto Rico (ASEM) | | |
| Peticionarios | | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 27 de febrero de 2015.

Comparece la Administración de Servicios Médicos de Puerto Rico (ASEM) y nos solicita que revisemos una Sentencia emitida por el Tribunal de Apelaciones. Mediante esta, el foro *a quo* revocó una Resolución dictada por un Oficial Examinador de la ASEM en la que se confirmó el despido del Sr. Luis Rosa Maisonet (señor Rosa Maisonet o recurrido) por incurrir en un acto de hostigamiento sexual contra una empleada que este supervisaba.

El presente recurso nos brinda la oportunidad, *inter alia*, de diferenciar los efectos de la Ley Núm. 17, *infra*, que prohíbe el hostigamiento sexual en el empleo, en una acción civil por hostigamiento sexual contra un patrono *vis à vis* aquellos casos en los que un patrono despide a un empleado por incurrir en conducta constitutiva de

hostigamiento sexual prohibida por los Reglamentos y las Normas de Conducta de su taller laboral.

Hoy resolvemos que bajo los parámetros estatutarios que le imponen a todo patrono la obligación de prevenir, prohibir y erradicar el hostigamiento sexual en el empleo, un patrono no está obligado a probar un caso *prima facie* de hostigamiento sexual contra su empleado para poder despedirlo como sanción por incumplir con las normas de hostigamiento sexual de su taller de empleo. Es decir, un patrono puede ir más allá de los parámetros establecidos en la Ley Núm. 17, *infra,* al definir en sus Normas de Conducta y Reglamentos lo que constituye hostigamiento sexual.

Con todo lo anterior en mente, pasemos a delinear los antecedentes fácticos que generaron la controversia de autos.

I

La controversia que originó el recurso de epígrafe tiene su génesis el 20 de julio de 2012, fecha en la que la ASEM confirmó la destitución del señor Rosa Maisonet luego de determinar, mediante el proceso administrativo correspondiente, que este hostigó sexualmente durante horas laborables a una empleada que estaba bajo su supervisión inmediata.

Surge de los autos que el acto específico de hostigamiento sexual que dio lugar al despido del señor Rosa Maisonet ocurrió el 17 de junio de 2011. Ese día, la

Sra. Milka Cruz Cruz (señora Cruz) se encontraba en su área de trabajo despachando "de pie y doblada" un expediente de un paciente, cuando el señor Rosa Maisonet le dio "una nalgada sonada en la cadera".[1] *Ipso facto*, la señora Cruz le expresó su indignación al recurrido y le manifestó que le había faltado el respeto y lacerado su dignidad como mujer.[2]

Este evento ocurrió en presencia de varios colegas de la señora Cruz y alrededor de sesenta (60) pacientes.[3] El contacto físico no deseado perpetrado por su Supervisor hacia esa parte íntima de su cuerpo ocasionó que la señora Cruz comenzara a llorar y tuviera que abandonar sus tareas para salir de su área de trabajo a tratar de tranquilizarse.[4] No obstante, la señora Cruz no pudo recomponerse por lo que solicitó autorización para retirarse temprano de su turno de trabajo.[5]

Dos días después, el 20 de junio de 2011, la señora Cruz retornó a su lugar de empleo y solicitó ser reubicada a otra área de trabajo.[6] En esa misma fecha, la Supervisora del señor Rosa la entrevistó en cuanto al incidente y

---

[1] Véase, Determinaciones de Hechos de la Resolución del Oficial Examinador de la ASEM, Apéndice del recurso de *certiorari*, pág. 31.

[2] Véase, Resolución emitida por la Oficina de Recursos Humanos y Relaciones Laborales de la ASEM, Apéndice del recurso de *certiorari*, pág. 64.

[3] Véase, Determinaciones de Hechos de la Resolución del Oficial Examinador de la ASEM, Apéndice del recurso de *certiorari,* pág. 31.

[4] *Íd.*

[5] *Íd.* en la pág. 32.

[6] *Íd.*

redactó un Informe Preliminar en el que describió lo sucedido. Posteriormente, y como medida provisional, reubicó tanto al señor Rosa Maisonet como a la señora Cruz a otras áreas de trabajo. Asimismo, la Oficina de Recursos Humanos de la ASEM inició una investigación formal del incidente.[7]

Entretanto, el 24 de junio de 2011, la señora Cruz se reunió con la Coordinadora de Política Pública sobre Hostigamiento Sexual en el Empleo de la ASEM, y presentó una Queja en contra del señor Rosa Maisonet por hostigamiento sexual. Posteriormente, el 29 de junio de 2011, la señora Cruz presentó una Querella formal contra su Supervisor.[8] En consecuencia, el Director Interino de

---

[7] Como parte de esa investigación se entrevistaron a varios empleados que presenciaron el incidente. En su entrevista, el Sr. Joel Díaz Rodríguez, Asistente de Servicios Clínicos de las Clínicas Externas de la ASEM expresó que

> el día de los hechos, aproximadamente entre las 8:00 a.m. y las 9:00 a.m., se encontraba en el área del "counter" de Ortopedia de frente a la señora Milka Cruz y que **vio al señor Luis Rosa hacer un amague de que le iba dar una nalgada a la señora Cruz. También observó al Oficial Víctor Quiles hacerle un gesto con la cabeza al señor Rosa de que no lo hiciera. Sin embargo, acto seguido el señor Rosa le dio la nalgada a la señora Cruz.** El señor Díaz indicó que su motivación para declarar fue ver el estado en el que se puso la señora Cruz, que se sintió avergonzada y estaba llorando por la situación, por lo que él entendió que tenía que decir lo que vio. (Énfasis suplido). Véase, Resolución emitida por la Oficina de Recursos Humanos y Relaciones Laborales de la ASEM, Apéndice del recurso de *certiorari*, pág. 66.

Por otro lado, el Sr. Victor E. Quiles Martínez, Agente de Vigilancia de la ASEM indicó que el día de los hechos

> vio la mano del señor Rosa y escuchó que sonó una palmada y que acto seguido, la señora Cruz reaccionó bien molesta y salió del área llorando. *Íd.*

[8] Junto a su Querella la señora Cruz emitió una Declaración Jurada en la que ofreció su versión de los hechos. En esta relató lo siguiente:

Recursos Humanos se reunió con el señor Rosa Maisonet para leerle la Querella suscrita por la señora Cruz, proveerle la oportunidad de reaccionar a esta y para que ofreciera su versión de los hechos. En esa entrevista, el señor Rosa Maisonet aceptó que "le dio una palmada a la empleada en la parte de atrás y que fue un evento de un segundo y nada más".[9]

Culminada la investigación, el 5 de agosto de 2011 se celebró una Vista Informal a la cual el señor Rosa Maisonet compareció acompañado de su representación legal. En esta se le notificó el resultado preliminar de la investigación y se le brindó una segunda oportunidad para expresar su versión de los hechos. Además, se le informó que el caso pasaría a la consideración del Director Ejecutivo de Recursos Humanos para una decisión final que se le notificaría por escrito.

Tras la celebración de esa vista, el 29 de agosto de 2011, la Oficina de Recursos Humanos y Relaciones

---

Estoy dentro del counter de mi área de trabajo en Ortopedia despachando unos expedientes para dar citas, cuando mi supervisor el Sr. Luis Rosa me da una nalgada sonada, frente a mis compañeros de trabajo Joel, Migdalia, Carmen Pizarro y el Oficial Quiles. Seguido sale del counter y yo me voy detrás de él y le reclamo por qué hizo eso, que como mujer me humilló, me ofendió y lo estimaba como a un padre y mi reputación me la tronchó y el respeto mío como mujer ¿dónde quedaba? Seguido se disculpa y le digo "te disculpo porque somos adultos, pero me humillaste como mujer"; recojo mi cartera y me voy a un banquito afuera hasta las diez, que le digo a la Gerente que tuve un problema personal, que me voy. Me indica que por qué no se lo notifico al supervisor, y le dije que el problema fue con él, pero que no le diga nada que se lo notifico el lunes. Véase, Resolución emitida por la Oficina de Recursos Humanos y Relaciones Laborales de la ASEM, Apéndice del recurso de *certiorari,* pág. 65.

[9] *Íd.*

Laborales de la ASEM emitió una Resolución en la que detalló los resultados de la investigación iniciada a raíz de la Querella presentada por la señora Cruz. En esta se concluyó que el acto incurrido por el señor Rosa Maisonet constituyó hostigamiento sexual en su modalidad de ambiente hostil. Así, y amparándose en las Normas de Conducta y Medidas Disciplinarias de la ASEM que establecen como sanción el despido de un empleado cuando incurre en un acto constitutivo de hostigamiento sexual, la Oficina de Recursos Humanos recomendó el despido del señor Rosa Maisonet.

Así las cosas, el 12 de septiembre de 2011, el Director Interino de la Oficina de Recursos Humanos y Relaciones Laborales de la ASEM le cursó una carta al señor Rosa Maisonet mediante la cual le notificó la decisión del Director Ejecutivo de despedirlo. En la carta se le informó el resultado de la investigación y se le explicó que la razón de su despido se fundamentó en que este faltó a la Norma de Conducta número treinta y siete (37) de la ASEM. Además, se le apercibió de su derecho a someter su caso ante la consideración de un Oficial Examinador Para Atender Quejas y Controversias del Personal Gerencial.[10]

Inconforme, el día siguiente el recurrido apeló esa determinación ante un Oficial Examinador de la ASEM. *Inter alia*, el señor Rosa Maisonet arguyó que era irrazonable

---

[10] Apéndice del recurso de *certiorari*, págs. 70-71.

concluir que los hechos ocurridos redundaran en el despido de un empleado de carrera que nunca había sido objeto de faltas o querellas de esa índole. El recurrido entendió, además, que el incidente que dio lugar a su destitución fue uno aislado que duró solo un segundo y que, por lo tanto, no constituía hostigamiento sexual en su modalidad de ambiente hostil.

Luego de celebrada una Vista Administrativa en su fondo ante el Oficial Examinador, la cual se extendió por varios días, el 20 de julio de 2012 la ASEM emitió una Resolución en la que confirmó la medida disciplinaria tomada por el Director Ejecutivo de la Oficina de Recursos Humanos. En la Resolución emitida a esos efectos se determinaron probados, *inter alia*, los siguientes hechos: (1) que mientras la señora Cruz despachaba "de pie y doblada" un expediente de un paciente el señor Rosa Maisonet le dio "una nalgada sonada en la cadera"; (2) que al momento del incidente el señor Rosa Maisonet era el Supervisor inmediato de esta; (3) que "en ningún momento la señora Cruz autorizó al señor Rosa a tocarla de ninguna forma"; (4) "[p]roducto de lo sucedido, la señora Cruz acudió a PAE y todavía asiste a terapias en la CFSE", y (5) a raíz del incidente varios empleados le han hecho comentarios a la señora Cruz "en ocasiones en tono de burla", al "punto que la Administración tuvo que emitir

una prohibición so pena de sanciones".[11] Además, en dicha Resolución el Oficial Examinador señaló que:

> El señor Rosa Maisonet indicó como defensa que solamente le dio una palmada en la cadera y que la misma duró menos de un segundo. Esto resulta ser una admisión [de] que hubo contacto físico no deseado ni autorizado. **El hecho que no haya existido un patrón de acciones, no priva a la Administración que aplique medidas disciplinarias, pues un solo acto es suficiente.** No podemos pasar por alto que todavía, por dichas acciones, la Sra. Cruz Cruz asiste a terapias en le CFSE. (Énfasis suplido). Véase, Resolución del Oficial Examinador de la ASEM, Apéndice del recurso de *certiorari,* pág. 33.[12]

Inconforme, el 29 de agosto de 2012, el señor Rosa Maisonet acudió al Tribunal de Apelaciones mediante un Recurso de Revisión Administrativa. Allí argumentó, en síntesis, que el Oficial Examinador abusó de su discreción al confirmar de manera arbitraria la decisión del Director Ejecutivo de Recursos Humanos que redundó en su despido.

Por entender que se trató de un incidente aislado insuficiente para que la conducta imputada al señor Rosa Maisonet pudiera catalogarse como hostigamiento sexual en su modalidad de ambiente hostil, el foro apelativo intermedio revocó la Resolución emitida por la ASEM.[13] A esos efectos, ordenó la reinstalación del señor Rosa

---

[11] Véase, Determinaciones de Hechos de la Resolución del Oficial Examinador de la ASEM, Apéndice del recurso de *certiorari,* págs. 31-32.

[12] El 15 de agosto de 2012, el recurrido solicitó la reconsideración de la referida Resolución, pero la misma fue declarada sin lugar.

[13] El Juez de Apelaciones Hon. Roberto Rodríguez Casillas emitió un voto disidente.

Maisonet a su puesto y el pago de los salarios y cualquier otro emolumento y/o beneficios dejados de percibir.[14]

No contestes con la determinación del foro *a quo*, el 23 de diciembre de 2013 la ASEM acudió ante nos mediante un recurso de *certiorari* en el que señaló la comisión de los errores siguientes:

> Erró el Honorable Tribunal de Apelaciones al REVOCAR la Resolución del Examinador Administrativo, toda vez que rebasó su función revisora y no resolvió a tenor con el criterio de deferencia judicial, ni a tenor con el criterio de la razonabilidad de la determinación del Foro Administrativo, lo que provocó que el TA sustituyera su criterio por el del foro administrativo, sin base legal para ello.

> Erró el Honorable Tribunal de Apelaciones al REVOCAR la Resolución Administrativa, toda vez que actuó a base de una intromisión indebida en la apreciación de la prueba, ausente los criterios de pasión, prejuicio y parcialidad, y en oposición a la norma de abstención judicial que deben observar los tribunales de mayor jerarquía, al ejercer su función revisora.

> Erró el Honorable Tribunal de Apelaciones en su análisis, interpretación y aplicación de la norma vigente, en el campo de hostigamiento sexual, en su modalidad de ambiente hostil, lo que resultó en una determinación contraria a derecho.

Atendido el recurso de *certiorari* presentado por los peticionarios, el 30 de mayo de 2014 expedimos el auto solicitado. Contando con el beneficio de la comparecencia

---

[14] Inconforme con la determinación del foro *a quo*, la ASEM presentó una Moción de Reconsideración que fue declarada sin lugar mediante Resolución notificada el 21 de noviembre de 2013.

de ambas partes, estamos en posición de resolver la controversia de autos sin ulterior trámite.

II

A.

Es un precepto cardinal forjado en nuestra Carta Magna que la dignidad del ser humano es inviolable. Art. II, Sec. 1, Const. PR, LPRA, Tomo I. Véase, además, *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR 1001, 1014 (2012). Así pues, al amparo de este principio básico nuestra *lex superior* expresamente prohíbe el discrimen por razón de raza, color, sexo, nacimiento, origen, condición social e ideas políticas o religiosas. Art. II, Sec. 1, Const. PR, *supra*. Asimismo, y como corolario de este principio primordial y rector de nuestro orden social, la Constitución de Puerto Rico protege a toda persona contra ataques abusivos a su honra, reputación y vida privada o familiar. Art. II, Sec. 8, Const. PR, LPRA, Tomo 1.

En consecución de estos mandatos y con el fin de impartirle eficacia a este cuerpo supremo de normas, nuestra Asamblea Legislativa ha adoptado una serie de estatutos que buscan proteger a un ciudadano de discrímenes en el ámbito laboral.[15] Particularmente pertinente a la controversia de autos, hace más de dos (2) décadas la Asamblea Legislativa aprobó la Ley Núm. 17 de

---

[15] Véanse, por ejemplo, la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 LPRA secs. 146-151 que prohíbe que se despida, suspenda o discrimine contra un empleado, *inter alia,* por razón de sexo y la Ley Núm. 69 de 6 de julio de 1985, según enmendada, 29 LPRA sec. 1321, *et seq.*, la cual prohíbe el discrimen por razón de sexo en el empleo.

22 de abril de 1988, 29 LPRA sec. 155 *et seq.*, mediante la cual declaró como política pública del Estado que el hostigamiento sexual es una forma de discrimen por razón de sexo que atenta contra la inviolabilidad de la dignidad del ser humano. *U.P.R. Aguadilla v. Lorenzo Hernández, supra*, pág. 1015. Véanse, además, *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643, 651 (1994) y *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 DPR 117, 125 esc. 4 (1990). Mediante el referido estatuto, se elevó el hostigamiento sexual al mismo plano jurídico que otras modalidades de discrimen proscritas en leyes anteriores. Véase, Exposición de Motivos de la Ley Núm. 17, *supra,* 1988 Leyes de Puerto Rico 80. Además, el legislador prohibió terminantemente el hostigamiento sexual en el empleo, impuso responsabilidades y fijó las penalidades correspondientes por incumplimiento. 29 LPRA sec. 155 *et seq.*

La política pública del Estado contra el hostigamiento sexual quedó diáfanamente plasmada en su Exposición de Motivos la cual reza:

> [l]a práctica de hostigamiento sexual en el empleo, en cualquiera de sus formas, infringe la inviolabilidad [de la dignidad del] ser humano y constituye un claro discrimen contra el hombre o mujer en el campo del trabajo. Obstaculiza la labor de la persona, privándola del goce y disfrute de una vida plena a la cual tiene derecho todo ser humano en igualdad de condiciones ante la ley, según lo expresa el mandato constitucional y es una de las formas en que se manifiesta el discrimen por razón de sexo […]

La magnitud de este problema es algo que nos debe interesar y preocupar a todos, ya que el hostigamiento sexual en el empleo constituye una ofensa repudiable contra la dignidad de todo ser humano. Véase, Exposición de Motivos de la Ley Núm. 17, *supra*, 1988 Leyes de Puerto Rico 80.[16]

Por su parte, el Art. 3 de la Ley Núm. 17, *supra*, define el hostigamiento sexual de la siguiente manera:

El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual […] cuando se da una o más de las siguientes circunstancias:

(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. 29 LPRA sec. 155b.

En el pasado al interpretar la Ley Núm. 17, *supra,* hemos expresado que los incisos (a) y (b) se refieren a la modalidad de hostigamiento conocida como hostigamiento equivalente o *quid pro quo*. Mientras que, el inciso (c) recoge la modalidad de hostigamiento sexual por ambiente hostil. *Delgado Zayas v. Hosp. Int. Med. Avanzada, supra,* pág. 653. La primera modalidad se concreta cuando "el

---

[16] Véase, además, Artículo 1 de la Ley Núm. 17 de 22 de abril de 1988, según enmendada, 29 LPRA sec. 155.

sometimiento o el rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo". *Rodríguez Meléndez v. Sup. Amigo, Inc., supra,* pág. 132. A su vez, la modalidad de hostigamiento sexual por ambiente hostil ocurre "cuando la conducta sexual para con un individuo tiene el efecto de intervenir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante hostil u ofensivo". *Íd.* Véase, además, *Albino v. Ángel Martínez, Inc.,* 171 DPR 457 (2007). La Ley Núm. 17, *supra*, dispone, además, que para determinar si una conducta constituye hostigamiento sexual, en cualquiera de sus modalidades, será necesario considerar la totalidad de las circunstancias y los hechos particulares de cada caso. 29 LPRA sec. 155c; *Albino v. Ángel Martínez, supra,* pág. 471.

En aras de hacer cumplir su clara política pública de prohibir el hostigamiento sexual en el ámbito obrero-patronal, una vez se determina que una conducta constituye hostigamiento sexual, la Ley Núm. 17, *supra*, responsabiliza al patrono mediante sanción por las consecuencias de la conducta ilegal. *Íd.* pág. 472.[17] No

---

[17] El Art. 2 de la Ley Núm. 17, *supra*, 29 LPRA sec. 155a, define el termino patrono de la manera siguiente:

(2) *Patrono.*—Significa toda persona natural o jurídica de cualquier índole, el Gobierno del Estado Libre Asociado de Puerto Rico, incluyendo cada una de sus tres Ramas y sus instrumentalidades o corporaciones públicas, los gobiernos municipales y cualquiera de sus instrumentalidades o corporaciones municipales, que con ánimo de lucro o sin él, emplee personas mediante cualquier clase de compensación y sus agentes y supervisores. Incluye, además, las organizaciones obreras y otras organizaciones, grupos o asociaciones en

obstante, la responsabilidad patronal dependerá de la relación laboral existente entre el hostigador y la víctima. Ello porque el estatuto distingue entre los actos de hostigamiento cometidos por el patrono, sus supervisores o agentes y aquellos actos realizados por los empleados. 29 LPRA secs. 155d y 155e.[18]

Un elemento característico del referido estatuto es que **le impone a todo patrono el deber afirmativo de tomar aquellas medidas necesarias para prevenir**, **prohibir y erradicar el hostigamiento sexual en el empleo.** (Énfasis suplido). *Delgado Zayas v. Hosp. Med. Avanzada*, *supra,* pág. 652. Es decir, le exige al patrono mantener su taller de trabajo libre de hostigamiento e intimidación y le impone la obligación de que exponga de manera clara su política institucional contra el hostigamiento sexual en aras de garantizar que su fuerza laboral goce de un ambiente de trabajo seguro en el cual se proteja su dignidad. *Íd.;* 29 LPRA sec. 155i.

Así pues, para cumplir cabalmente con su obligación de prevenir, desalentar y evitar el hostigamiento sexual en su taller de trabajo la Ley Núm. 17, *supra,* le impone al patrono una serie de deberes. A esos efectos, tendrá la obligación de tomar aquellas medidas que sean necesarias o

---

las cuales participan empleados con el propósito de gestionar con los patronos sobre los términos y condiciones de empleo, así como las agencias de empleo.

[18] Véanse, además, 29 LPRA secs. 155f, 155g y 155h.

convenientes en la consecución de ese fin, las cuales incluyen, *pero no se limitan a*, las siguientes:

> (a)  Expresar claramente a sus supervisores y empleados que el patrono tiene una política enérgica contra el hostigamiento sexual en el empleo.

> (b)  Poner en práctica los métodos necesarios para crear conciencia y dar a conocer la prohibición del hostigamiento sexual en el empleo.

> (c)  Dar suficiente publicidad en el lugar de trabajo, para los aspirantes a empleo, de los derechos y protección que se les confieren y otorgan […]

> (d)  Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. 29 L.P.R.A. sec. 155i.

Como se puede colegir, la Ley Núm. 17, *supra*, provee unas **guías mínimas y le confiere discreción a cada patrono para adoptar aquellas normas que entienda convenientes para cumplir con el deber afirmativo que le impone ese estatuto.** En cuanto a este particular en *Delgado Zayas v. Hosp. Int. Med. Avanzadas, supra,* expresamos que

> la ley de hostigamiento sexual no recomienda que los patronos adopten un reglamento en particular para cumplir con el propósito de la ley, **sino que le da unas guías mínimas para que, a su discreción, adopten una política efectiva en contra del hostigamiento.** Corresponde a cada patrono, a la luz de las circunstancias particulares, tomar las medidas cautelares que sean necesarias para evitar con efectividad el hostigamiento sexual en sus talleres de trabajo. (Énfasis suplido). *Íd.* pág. 658.

Por otro lado, la Ley Núm. 17, *supra,* no solo le exige al patrono que prohíba el hostigamiento sexual en el empleo sino que, de ocurrir un incidente de esta naturaleza, el patrono debe tomar una "acción inmediata y apropiada para corregir la situación". 29 LPRA sec. 155e.

En fin, la política pública del Gobierno de Puerto Rico contra el hostigamiento sexual en el ámbito obrero-patronal es clara y le corresponde a cada patrono tomar las medidas necesarias para cumplir cabalmente con ese mandato *so pena* de sanciones.

### B.

Por otro lado, es sabido que en el campo laboral público rige el principio de mérito. *Vázquez Cintrón v. Banco de Desarrollo*, 171 DPR 1, 12-13 (2007). Véanse, además, *López v. C.E.E.,* 161 DPR 527 (2004) y *Martínez v. Ofic. del Gobernador,* 152 DPR 586, 592 (2000). En esencia este principio busca garantizar que aquellas personas que estén empleadas por el Gobierno se seleccionen y se retengan exclusivamente en consideración a sus méritos e idoneidad. *González Segarra v. CFSE*, 188 DPR 252, 280 (2013) citando a A. Cuevas Biret, *La negociación colectiva y el sistema de mérito en Puerto Rico,* San Juan, [s. Ed.], 1974, pág. 16. Su propósito es dual, pues ampara tanto la selección del empleado así como su destitución.

Como corolario de este principio, hemos resuelto en innumerables ocasiones que un empleado público de carrera ostenta un interés propietario en la retención de su

empleo del cual no puede ser privado sin que medie un debido proceso de ley. Véanse, *González Segarra v. CFSE*, *supra*, pág. 279; *Vázquez González v. Mun. de San Juan*, 178 DPR 636, 643 (2010) y *Vázquez Cintrón v. Banco de Desarrollo*, *supra*, pág. 21. Cónsono con lo anterior, para dar cumplimiento a la garantía constitucional que protege a todo ciudadano cuando se atenta contra sus intereses individuales libertarios y propietarios es necesario que se cumplan los requisitos siguientes: "(1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente". *Vázquez González v. Mun. de San Juan*, *supra*. Véase, además, *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881, 889 (1993). De modo que, para afectar el derecho propietario que ostenta un empleado público sobre su plaza "es necesario celebrar una vista informal previa en donde se le dé al empleado la oportunidad de ser escuchado". *Vázquez González v. Mun. de San Juan*, *supra,* págs. 643-644.

El sistema de mérito en la administración del personal del Gobierno de Puerto Rico está regido por la Ley Núm. 184-2004, según enmendada, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, 3 LPRA

sec. 1461 *et seq.*[19] A pesar de que este estatuto se hizo extensivo a numerosas agencias e instrumentalidades gubernamentales del Gobierno algunas quedaron excluidas de su aplicación. No obstante, la Ley Núm. 184-2004, *supra,* especifica que aquellos grupos excluidos deberán adoptar reglamentos de personal que incorporen el principio de mérito en la administración de sus recursos humanos. 3 LPRA sec. 1461e.

A pesar de que la ASEM está excluida de las leyes de personal del servicio público, su ley habilitadora le exige adoptar un sistema de personal basado en el principio de mérito.[20] En cumplimiento con este mandato, la ASEM aprobó el *Reglamento para la Administración de los Recursos Humanos del Servicio de Carrera y Confianza de la ASEM* con el propósito de "establecer las normas que regirán la administración de los recursos humanos en la ASEM, estableciendo como precepto que en todas las

---

[19] Sus antecesoras lo fueron la Ley Núm. 345 de 12 de mayo de 1947, conocida como Ley de Personal la cual fue derogada por la Ley Núm. 5 de 14 de octubre de 1975 conocida como Ley de Personal del Servicio Público. Al igual que los referidos estatutos, la Ley Núm. 184-2004, según enmendada, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico estableció como política pública la reafirmación del principio de mérito en el servicio público. 3 LPRA sec. 1461c. Para una discusión más detallada sobre este particular véanse, *González Segarra v. CFSE*, 188 DPR 252 (2013); *Vázquez González v. Mun. de San Juan*, 178 DPR 636 (2010) y *Vázquez Cintrón v. Banco de Desarrollo*, 171 DPR 1 (2007).

[20] Véase Ley Núm. 66 de 22 de junio de 1978, según enmendada, conocida como Ley de la Administración de Servicios Médicos de Puerto Rico, 24 LPRA sec. 342m.

acciones de personal se garantice el principio de mérito".[21]

Dicho Reglamento dispone que "los empleados de carrera con estatus regular tendrán seguridad en el empleo siempre que satisfagan los criterios de productividad, eficiencia, hábitos, actitudes, orden y disciplina que debe prevalecer en el servicio público".[22] A su vez, dispone que se tomarán medidas correctivas necesarias **cuando la conducta del empleado no se ajuste a las normas establecidas en ese Reglamento o en las Normas de Conducta y Medidas Disciplinarias de la ASEM.**[23]

Para analizar la controversia de autos en su debido contexto, procede que pasemos a examinar los Reglamentos de la ASEM que específicamente prohíben la conducta que dio lugar al despido del recurrido.

### C.

En lo que concierne a la controversia de autos, las Normas de Conducta y Medidas Disciplinarias de la ASEM[24] definen el hostigamiento sexual como "**todo tipo de conducta sexual indeseada** que ocurre en la relación de empleo y afecta las oportunidades de empleo, el empleo

---

[21] Véase, Reglamento para la Administración de los Recursos Humanos del Servicio de Carrera y Confianza de la Administración de Servicios Médicos de Puerto Rico Núm. 7926, Administración de Servicios Médicos, 27 de septiembre de 2010.

[22] *Íd.*

[23] *Íd.*

[24] La Ley Núm. 66, *supra*, faculta a la ASEM, *inter alia*, a "formular, adoptar, enmendar y derogar reglas y reglamentos necesarios para su funcionamiento". 24 LPRA sec. 342g.

mismo, sus términos y condiciones o el ambiente de trabajo de la persona".[25] A su vez, el referido cuerpo de normas contiene un listado *numerus apertus* de las medidas disciplinarias aplicables a cada falta de conducta tipificada.[26] La falta número treinta y siete (37) de ese listado prohíbe el hostigamiento sexual entre empleados, visitantes o pacientes. **Según las Normas de Conducta de la ASEM ese tipo de actuación conlleva por una primera infracción una sanción mínima de treinta (30) días de suspensión o la destitución como sanción máxima**.[27]

Por otro lado, y en cumplimiento con el mandato claro de la Ley Núm. 17, *supra,* la ASEM promulgó un Reglamento que recoge su política institucional contra el Hostigamiento Sexual.[28] A esos efectos, el referido Reglamento contiene la siguiente declaración de política pública:

> [l]a Administración de Servicios Médicos de Puerto Rico entiende que el hostigamiento sexual en el empleo constituye una práctica ilegal y discriminatoria, contraria a los mejores intereses institucionales, que **no habrá de ser permitida ni tolerada, independientemente del nivel, jerarquía o posición de las personas que puedan resultar involucradas.** Tampoco se permitirá que persona alguna genere un ambiente de trabajo intimidante, hostil u ofensivo debido al hostigamiento sexual en cualquiera de sus modalidades. Reglamento de la ASEM sobre hostigamiento sexual en las áreas de trabajo,

---

[25] Véase, Normas de Conducta y Medidas Disciplinarias de la ASEM, Apéndice del recurso de *certiorari,* pág. 194. (Énfasis suplido).

[26] *Íd*. págs. 217-248.

[27] *Íd.* pág. 241.

[28] Véase, Reglamento de la ASEM sobre hostigamiento sexual en las áreas de trabajo, Apéndice del recurso de *certiorari,* pags. 159-182.

Apéndice del recurso de *certiorari,* pag. 171. (Énfasis suplido).

A su vez, ese cuerpo de normas establece el procedimiento interno que habrá de seguirse para ventilar Querellas de hostigamiento sexual en aras de garantizarle un Debido Proceso de Ley a las partes involucradas. Ese procedimiento comienza con la presentación de una Querella e incluye -a *grosso modo-* una investigación y la celebración de una Vista Informal.[29]

El Reglamento de la ASEM incorpora la definición de Hostigamiento Sexual contenida en la Ley Núm. 17, *supra.* No obstante añade a su definición de hostigamiento sexual lo siguiente:

> [e]l hostigamiento sexual en el empleo abarca una amplia gama de conducta que incluye desde los actos más sutiles y disimulados hasta la agresión sexual simple o agravada. En sus manifestaciones más simples incluye piropos de contenido sexual o eróticos; bromas o chistes de contenido sexual o erótico, invitaciones insinuantes, insinuaciones sexuales o eróticas y miradas insistentes a distintas partes del cuerpo. **La manifestación más grave de este tipo de conducta incluye actos tales como roces corporales, apretones, pellizcos, besos y agresiones sexuales.** (Énfasis suplido). *Íd.* págs. 162-164.

Ese Reglamento dispone, además, que todo Director, Gerente, Superintendente y **Supervisor** de la ASEM "tiene la obligación especial, firme e ineludible de velar porque en todas las áreas de trabajo se mantenga un ambiente que esté libre de hostigamiento sexual e intimidación".[30]

---

[29] *Íd.* págs. 170-178.

[30] *Íd.* pág. 167.

A tenor con su política enérgica contra el hostigamiento sexual el Reglamento de la ASEM dispone de manera diáfana que se tomarán medidas disciplinarias contra todo empleado que incurra en este tipo de conducta. **Al igual que las Normas de Conducta y Medidas Disciplinarias, el Reglamento de Hostigamiento Sexual de la ASEM establece por una primera infracción una sanción mínima de treinta (30) días de suspensión o la destitución como sanción máxima.**[31]

A la luz de este crisol doctrinario, pasemos a atender la controversia ante nuestra consideración.

III

La controversia de autos es relativamente sencilla. Específicamente, estamos llamados a determinar si el Tribunal de Apelaciones erró al revocar la Resolución emitida por la ASEM por entender que el acto cometido por el recurrido de autos no constituyó hostigamiento sexual en su modalidad de ambiente hostil. Como discutiremos a continuación, concluimos que el foro apelativo intermedio erró al aplicar las disposiciones de la Ley Núm. 17, *supra*, y su jurisprudencia interpretativa a un caso de **despido** en el sector público.

*In limine*, en su función revisora, le correspondía al foro *a quo* determinar si la ASEM despidió al señor Rosa Maisonet conforme a derecho. Para ello, debía examinar si el recurrido, por ser un empleado regular de carrera de la

---

[31] *Íd*. pág. 182.

ASEM, quien ostentaba un derecho propietario sobre su puesto, fue destituido mediando un debido proceso de ley. Según hemos discutido, para destituir de su puesto a un empleado público de carrera es necesario que se cumplan los requisitos siguientes: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el expediente. Además, y como parte de este proceso, el Tribunal de Apelaciones debía evaluar si las disposiciones reglamentarias en las que se fundamentó el despido del recurrido eran razonables y no arbitrarias y caprichosas.

Luego de evaluar detenidamente los autos podemos constatar que estos requisitos procesales básicos se cumplieron y que, por lo tanto, el señor Rosa Maisonet fue destituido mediando un debido procedimiento de ley. El recurrido no produjo evidencia para demostrar que alguno de estos requisitos haya sido obviado por la ASEM.

No obstante, además de eludir por completo este análisis, el foro *a quo* revocó la Resolución de la ASEM por entender que a pesar de que la conducta del recurrido podía constituir una violación a las normas disciplinarias de la ASEM, no se configuraron los requisitos jurisprudenciales y estatutarios para catalogar la conducta del señor Rosa Maisonet como hostigamiento sexual

en su modalidad de ambiente hostil. Mediante este razonamiento, el foro apelativo intermedio **se desvió de su función revisora y convirtió el caso de _despido_ que tenía ante su consideración en un caso de hostigamiento sexual al amparo de la Ley Núm. 17, _supra_.** Es decir, el foro apelativo intermedio evadió revisar la razonabilidad de las disposiciones reglamentarias en las que se fundamentó la ASEM para despedir al recurrido y en su lugar procedió a evaluar la controversia de autos como una de hostigamiento sexual en el empleo cuando en realidad lo que tenía ante su consideración era un caso de **despido** de un hostigador sexual. Erró el Tribunal de Apelaciones con ese proceder.

La modalidad de hostigamiento sexual en la que incurrió el recurrido no era determinante para que este foro decidiera si la ASEM lo despidió conforme a derecho. Como vimos, primero el foro apelativo intermedio debía revisar si al recurrido, como empleado público, se le respetó su derecho a un debido proceso de ley. Además, el Tribunal de Apelaciones debía determinar si el despido del recurrido fue uno arbitrario o caprichoso. El hecho de que en este caso no existiera un patrón de hostigamiento sexual por parte del recurrido no era óbice para que la ASEM aplicara las medidas disciplinarias detalladas en su Reglamento.

Como vimos, **la Ley Núm. 17, _supra_, no le impone al patrono la obligación de probar un caso _prima facie_ de**

**hostigamiento sexual contra su empleado para poder despedirlo como sanción por incumplir con las normas de hostigamiento sexual de su empresa.** *A contrario sensu,* la Ley Núm. 17, *supra*, le impone a todo patrono el deber de realizar actos afirmativos para desalentar el hostigamiento sexual en el ámbito laboral y promover activamente una política de prevención. En este ejercicio, la Ley Núm. 17, *supra*, no impide que un patrono opte por circunscribirse a las guías mínimas enumeradas en la Ley **o que elija ser más riguroso y proactivo en la adopción de medidas razonables para combatir efectivamente el hostigamiento sexual en su taller de trabajo.**

La ASEM, en cumplimiento con las exigencias de la Ley Núm. 17, *supra,* adoptó una política institucional estricta para prohibir el hostigamiento sexual y, además, estableció un procedimiento interno detallado para dilucidar controversias de esa índole. Al amparo de la discreción que le confiere la Ley Núm. 17, *supra,* para adoptar aquellas normas convenientes para cumplir con el deber de prohibir el hostigamiento sexual, la ASEM estableció en su Reglamento que una primera infracción de hostigamiento sexual, **es decir,** <u>**un solo acto**</u> **de hostigamiento sexual**, puede conllevar la destitución del empleado que incurra en esa conducta. Nada en la Ley Núm. 17, *supra,* prohíbe este tipo de medida disciplinaria. Una interpretación contraria **implicaría que un patrono tendría que esperar a que las víctimas de hostigamiento sexual**

**presenten una acción civil en su contra al amparo de la Ley Núm. 17, *supra*, <u>antes</u> de poder despedir válidamente al empleado hostigador.**

El recurrido, por ser una de las personas encargadas de ejecutar y velar por el cumplimiento de esa política institucional,[32] conocía que la ASEM tenía vigente un Reglamento que prohibía el hostigamiento sexual. De hecho, en el expediente de autos consta la firma del recurrido en un documento de la Oficina de Recursos Humanos de esa agencia que evidencia que a este se le hizo entrega del referido Reglamento.[33] No obstante, el recurrido optó por incumplir las normas claras de la ASEM y en claro menosprecio de la política institucional contra el hostigamiento sexual de esa instrumentalidad se aprovechó de su autoridad para propiciarle una nalgada a una subordinada.

Entre otras cosas, en su Reglamento la ASEM incluyó en la definición de hostigamiento sexual que actos tales como los roces corporales, los apretones y los pellizcos

---

[32] En cuanto a este particular, el Reglamento de la ASEM sobre hostigamiento sexual en las áreas de trabajo dispone que:

> [p]or el presente se establece que todo Director, Gerente, Superintendente y Supervisor de esta instrumentalidad pública tiene la obligación especial, firme e ineludible de velar porque en todas las áreas de trabajo se mantenga un ambiente que esté libre de hostigamiento sexual e intimidación.

> El deber del supervisor, para evitar todo acto de esta naturaleza, es prohibir esta conducta a visitantes y/o pacientes en el lugar de trabajo. También incluye la conducta que los empleados supervisados observen entre ellos mismos. Apéndice del recurso de *certiorari,* pág. 167.

[33] Véase Apéndice del recurso de *certiorari*, pág. 183.

se considerarán una manifestación grave de hostigamiento sexual. Sin duda, conforme a la definición de hostigamiento sexual de las Normas de Conducta y el Reglamento de la ASEM, la nalgada que el recurrido le propició a la señora Cruz constituye hostigamiento sexual. Con su actuación el recurrido violó la Regla Número treinta y siete (37) de la ASEM y como vimos, el despido era una posible sanción para esa conducta aunque se tratara de un incidente único. No existe impedimento alguno por el cual un patrono no pueda tomar este tipo de acción correctiva en aras de **evitar** que se cree un ambiente hostil en su taller laboral. Máxime cuando podría estar expuesto a sanciones bajo la Ley Núm. 17, *supra.*

Finalmente, el Tribunal *a quo* razonó que la ASEM no justificó la necesidad de imponerle al señor Rosa Maisonet la sanción máxima de destitución dispuesta en su Reglamento. Entendió este Foro que ese proceder fue arbitrario e irrazonable. No coincidimos con esta interpretación laxa del foro *a quo*. En el caso particular ante nos, el foro apelativo intermedio debió dar deferencia a la determinación administrativa de la ASEM, quien razonó que la medida disciplinaria adecuada era el despido y no la suspensión del señor Rosa Maisonet. Véanse, *González Segarra v. CFSE, supra,* y *Otero v. Toyota*, 163 DPR 716 (2005).

El acto de propiciarle una nalgada no consentida a una colega durante horas laborales es grave por sí solo.

**El hecho de que ese acercamiento sexual provino de un Superior hacia una empleada de menor jerarquía institucional es aún más grave y sin duda justifica la sanción máxima impuesta por la ASEM.** En solo un segundo la dignidad de esta mujer trabajadora fue lacerada por la misma persona que estaba obligada de velar porque los espacios laborales de la ASEM estuvieran libres de hostigamiento sexual. En lugar de garantizarles a sus empleados un ambiente laboral digno, el señor Rosa Maisonet utilizó su poder para -en un solo segundo- menguar la dignidad de la señora Cruz y desvalorizar su posición como mujer trabajadora.

Es inaudito que a estas alturas del Siglo XXI este tipo de conducta esté ocurriendo en los talleres laborales de Puerto Rico. El lugar de empleo es donde la mayoría de los ciudadanos pasamos gran parte de nuestras vidas. Nos levantamos cada día y acudimos a nuestros lugares de trabajo con el deseo de superarnos y ganarnos nuestro sustento económico con dignidad. Este acto tan básico y fundamental de nuestro quehacer social no puede ser manchado con esta repudiable conducta. Ello particularmente en el caso de las mujeres que han tenido que superar innumerables vicisitudes para romper las cadenas de la desigualdad y entrar al mundo laboral en igualdad de condiciones que los hombres. El que una mujer trabajadora haya sido víctima de conducta tan vil como la ocurrida en este caso es lamentable y francamente es

vergonzoso que para convalidar el despido de un hostigador sexual de esta índole la ASEM se haya visto obligada a llegar hasta el Tribunal Supremo de Puerto Rico.

IV

En fin, hoy resolvemos que la Ley Núm. 17, *supra*, no le exige a un patrono probar un caso *prima facie* de hostigamiento sexual a su empleado para poder despedirlo como sanción por incumplir con las normas de hostigamiento sexual de su empresa.[34] Lo que sí le exige la Ley Núm. 17, *supra*, a todo patrono es el deber de realizar actos afirmativos para desalentar el hostigamiento sexual en el ámbito laboral y promover activamente una política de prevención. En este ejercicio, la Ley Núm. 17, *supra*, no impide que un patrono opte por circunscribirse a las guías mínimas enumeradas en la Ley **o que elija ser más riguroso y proactivo en la adopción de medidas para combatir efectivamente el hostigamiento sexual en su taller de trabajo. Ello, siempre y cuando las normas y las sanciones correspondientes contenidas en dichos Reglamentos sean razonables.**

V

Por los fundamentos anteriormente esbozados, revocamos la Sentencia emitida por el Tribunal de Apelaciones y reinstalamos en toda su extensión la

---

[34] Sin embargo, según discutido, en el caso de los empleados públicos de carrera el patrono deberá cumplir con las exigencias del debido proceso de ley para afectar el derecho propietario que estos ostentan sobre sus plazas.

Resolución emitida por la ASEM que confirmó el despido del recurrido.

Se dictará Sentencia de conformidad.


                                        Mildred G. Pabón Charneco
                                             Jueza Asociada

| Luis Rosa Maisonet | | *Certiorari* |
|---|---|---|
| Recurrido | | |
| v. | CC-2013-1104 | |
| Administración de Servicios Médicos de Puerto Rico (ASEM) | | |
| Peticionarios | | |

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2015.

Por los fundamentos anteriormente esbozados, revocamos la Sentencia emitida por el Tribunal de Apelaciones y reinstalamos en toda su extensión la Resolución emitida por la ASEM que confirmó el despido del recurrido.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón disintió y emitió la expresión siguiente:

El Juez Asociado señor Feliberti Cintrón disiente haciendo constar la siguiente expresión: Aunque **no** justifico lo ocurrido bajo ninguna circunstancia, no podemos perder de perspectiva que este caso trata de un incidente <u>aislado</u> de completa falta de juicio de un empleado de carrera con una trayectoria intachable de más de treinta (30) años de servicio público que, lamentablemente, desembocó en su despido. Como dato curioso, cabe destacar que por el mismo incidente que dio base al despido del recurrido, el 12 de enero de 2012 la "U.S. Equal Employment Opportunity Commission" (EEOC) desestimó y archivó la querella que por los mismos hechos presentó la empleada en cuestión ante dicha agencia. Esto luego que la EEOC determinara que una vez realizada su

investigación al respecto no podía concluir que la información obtenida establecía violaciones a los estatutos aplicables. Véase la Sentencia del Tribunal de Apelaciones de 30 de septiembre de 2013, a la pág. 5.

Por haberse tratado de una primera infracción de parte del recurrido, y entender que bajo los hechos y circunstancias presentes en este caso la determinación de despido viola el principio de disciplina progresiva, respetuosamente disiento de la decisión tomada por este Tribunal. En este caso muy bien se pudo haber suspendido temporalmente de empleo y sueldo al recurrido, junto a otras medidas disciplinarias correctivas como lo fueron la reubicación del recurrido y la empleada en cuestión a distintas áreas de trabajo. En cambio, hubiera confirmado la Sentencia emitida por el Tribunal de Apelaciones.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo