| | | |
|---|---|---|
| JOSÉ A. RUIZ PÉREZ,<br><br>Recurrente,<br>v.<br><br>MUNICIPIO AUTÓNOMO DE SAN JUAN,<br><br>Recurrida. | KLRA202300397 | REVISIÓN procedente de la Comisión Apelativa del Servicio Público.<br><br>Caso núm.: 2014-09-0490 (2023 CA 000332).<br><br>Sobre: retención. |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

Comparece el recurrente señor José A. Ruiz Pérez (señor Ruiz) y nos solicita que revisemos la *Resolución* emitida y notificada el 6 de junio de 2023, por la Comisión Apelativa del Servicio Público (CASP). Mediante la misma, la CASP concluyó que el recurrente había incurrido en conducta de hostigamiento sexual en el empleo, por lo que la destitución como medida disciplinara, según impuesta por el recurrido Municipio Autónomo de San Juan (Municipio), fue correcta.

Por los fundamentos que exponemos a continuación, **confirmamos** la *Resolución* recurrida.

I

El señor Ruiz fue destituido de su puesto como Oficinista de Contabilidad en el Departamento de Salud del Municipio. Ello, tras determinarse que había incurrido en conducta constitutiva de hostigamiento sexual.

Inconforme, el 30 de septiembre de 2014, presentó ante la CASP un escrito de apelación[1] para impugnar la determinación del Municipio. En su escrito, relató que, el 20 de junio de 2014, había recibido una carta del Municipio mediante la cual se le notificaba una suspensión sumaria de

---

[1] *Véase*, apéndice del recurso, a las págs. 58-135.

Número identificador

SEN2023_____

empleo, pero no de sueldo. La suspensión estuvo motivada por una querella presentada por la señora Françoise Nazario Delgado por el supuesto hostigamiento sexual que ella había sufrido desde octubre de 2013. Añadió que mediante la referida carta se le citó a un interrogatorio sobre los hechos alegados por la querellante.

Planteó que, posteriormente, el 24 de junio de 2014, la Oficina de Administración de Recursos Humanos y Relaciones Laborales emitió un informe final de investigación mediante el cual concluyó que, conforme a la Ordenanza Núm. 30, Serie 2006-2007, Capítulo IV, intitulada *Reglamento de conducta y medidas disciplinarias del Municipio de San Juan*, había violado las normas de conducta prohibida núm.:1(e); 6; 23(b), (c), (d) y (e)[2].

En su apelación ante la CASP también señaló que, en virtud del referido informe, la Oficina de Administración de Recursos Humanos recomendó continuar con el proceso de acción disciplinaria en su contra y que se le notificase la intención de destitución, previa vista administrativa.

---

[2]  Las referidas normas disponían como sigue:

>  1. Insubordinación, tal como:
>
>  .         .         .         .         .         .         .         .
>
>  (e) No cumplir con las órdenes ejecutivas o administrativas emitidas por el alcalde o sus representantes autorizados (Autoridad Nominadora).
>
>  .         .         .         .         .         .         .         .
>
>  6. Comunicarse verbalmente o por escrito de forma grosera y/o irrespetuosa o usar lenguaje ofensivo, amenazante o indecoroso en el trabajo
>
>  .         .         .         .         .         .         .         .
>
>  23. Conducta o actuación que constituya hostigamiento sexual, tal como:
>
>  .         .         .         .         .         .         .         .
>
>  (b) Contacto físico o sugestivo no deseado en cualquier parte del cuerpo, tales como: agarrar, buscar a tientas, besar, apretar, acariciar, rozar, tocar, dar palmadas, pellizcar, dar masaje o manosear, abrazar, impedir o bloquear el paso.
>
>  (c) Verbal - Hacer comentarios sobre atributos físicos o utilizar epítetos, chistes o preguntas de índole sexual, difundir rumores, insinuaciones o hacer comentarios acerca de la vida social o sexual de alguna persona.
>  (d) Visual - Realizar actos no verbales, tales como: gestos sexuales sugestivos, **mostrar objetos, fotos, dibujos o afiches sexualmente explícitos, miradas lascivas, cartas, regalos o material de naturaleza sexual, utilizar los medios electrónicos para difundir mensajes obscenos u ofensivos**.
>
>  (e) Ambiente de trabajo – Promover un ambiente de trabajo sexualmente ofensivo, amenazante o intimidante.

(Énfasis nuestro).

Así pues, en la carta fechada el 15 de julio de 2014, se le citó a una vista informal, que finalmente se celebró el 5 de agosto de 2014. Además, la misiva contenía los cargos y violaciones imputadas, que incluyeron dos infracciones adicionales a las previamente imputadas; a decir: violación a las normas de conducta prohibida núm. 49 y 56, según contenidas en la Ordenanza Núm. 30, Serie 2006-2007[3].

El señor Ruiz fue destituido de su puesto como Oficinista de Contabilidad mediante la carta fechada el 21 de agosto de 2014[4].

En su apelación ante la CASP, el señor Ruiz concluyó que su destitución había sido contraria a derecho. En particular, arguyó que el Municipio no había agotado los recursos disponibles para el mejoramiento de su conducta, ni le había impuesto las medidas disciplinarias progresivas contenidas en el *Reglamento de conducta y medidas disciplinarias del Municipio de San Juan*. Añadió que ninguna de las posibles medidas disciplinarias aplicables a las conductas prohibidas que se le imputaron conllevaba su destitución; salvo la núm. 49, la cual, insistió, nunca se configuró.

En cuanto a la conducta prohibida núm. 56, sostuvo que no era aplicable a su caso, pues esta obedecía a conductas no tipificadas en la lista de conductas prohibidas. A la luz de sus señalamientos, arguyó que la conducta imputada solo conllevaba una suspensión de empleo y sueldo de 10 días, no la destitución.

---

[3] Las referidas normas de conducta prohibida, según dispuestas en el reglamento e incluidas en la carta, son:

.    .    .    .    .    .    .    .

49. Poner en peligro la vida y seguridad de otros empleados o personas de forma negligente o deliberada.

.    .    .    .    .    .    .    .

56. En caso de cualquier otra conducta impropia o en detrimento de los mejores intereses del Municipio, se aplicarán medidas disciplinarias de acuerdo a su importancia y gravedad, aun cuando la infracción no haya sido especificada en esta Tabla de Normas de Conducta y Medidas Disciplinarias.

[4] *Véase*, apéndice del recurso, a las págs. 172-175.

Por su parte, el 30 de octubre de 2014, el Municipio presentó su contestación a la apelación[5]. Luego de negar las alegaciones esenciales, hizo constar que acogía como parte de sus defensas las determinaciones de hechos previamente esbozadas en la carta de destitución del 21 agosto de 2014, así como el *Informe de la Oficial Examinadora* emitido el 18 de agosto de 2014[6]. En lo pertinente, la Oficial Examinadora consignó en su *Informe* las siguientes determinaciones:

.        .        .        .        .        .        .        .

- Cuando el peticionario comenzó con los piropos, ella le dio las gracias, pero luego **comenzó a incomodarse y a molestarle lo que él le decía y su insistencia y le pidió al peticionario que lo dejara de hacer.**

- En una ocasión el peticionario preguntó a la Sra. Nazario si le molestaba lo que él sentía por ella, a lo que ésta le contestó que siempre que no se esmandara con ella iban a quedar bien como compañeros de trabajo y que lo que sentía por ella eran sus sentimientos pero que la respectara.

- En otra ocasión el peticionario le dijo a la Sra. Nazario que borrara los mensajes que le enviaba y que bajara un programa para borrar los mensajes de Telegram, pero que ella nunca bajó el programa

- El lunes, 16 de junio de 2014**, el peticionario tomó por los hombros a la Sra. Nazario e intentó besarla per[o] ésta le viró la cara y le dijo que la respetara**. El peticionario la soltó. No hubo forcejeo. Eso sucedió como a las 3:15 pm de ese día cuando el peticionario ya había salido de su turno de trabajo y ella había comenzado el de ella.

- El martes, 17 de junio de 2014, **el peticionario indicó a la Sra, Nazario por mensaje de texto que lo ella [*sic*] lo excitaba y le gustaba y que no le importaba si estaba casada y le preguntó si estaba interesada en recibir fotos de él y si quería saber cómo lo tenía. Que ella le contestó que no hiciera eso, que no se esmandara y que estaba casada. Que a los 15 minutos recibió la foto de su pene y que ella le contestó que no se esmandara.** Que luego el peticionario le pidió perdón y le dijo que la foto no era para ella, que le pidió que lo llamara, pero que ella no lo llamó y que nunca dio motivos al peticionario para que enviara esa foto o le hizo insinuaciones para que lo hiciera.

- En la mañana del 18 de junio de 2014 la Sra. Nazario llevó una carta a su supervisor inmediato, Sr. Julio Ramos, sobre el incidente anterior y le contó al Sr. Ramos el incidente. Indicó al Sr. Ramos que nunca había dado motivos al peticionario para que hiciera eso y que **no lo había reportado antes para no perder el trabajo** y porque tampoco quería hacerle daño al peticionario quien llevaba muchos años

---

[5] *Véase*, apéndice del recurso, a las págs. 151-225.

[6] *Íd.*, a las págs. 176-189.

> trabajando para el MSJ. **Ese mismo día la Sra. Nazario fue al Centro Judicial de San Juan y solicitó una orden de protección que le fue concedida y también presentó una querella en la Policía de Puerto Rico**, Cuartel de Hato Rey. Este bajo el #Q-2014-1-182-4625. El jueves 19 de junio de 2014 la Sra. Nazario fue orientada en Hoare y referida a la Oficina de Desarrollo Integral de las Mujeres para ayuda y orientación.
>
> - Previamente en su declaración, **la Sra. Nazario expresó que nunca dijo nada porque ella era nueva (en el trabajo) y temía que la sacaran del empleo y porque el peticionario llevaba mucho tiempo trabajando en el lugar y no quería hacerle daño.**
>
> .     .     .     .     .     .     .     .     .
>
> - La Sra. Nazario se siente incómoda con el peticionario y trabajando con él. Alega que el peticionario se tomó mucha confianza con ella sin ella brindársela y que **luego que el peticionario le envió la foto le dio mucha ansiedad y se ha sentido muy triste.** Que luego del incidente el peticionario le envió un mensaje por *Facebook* disculpándose y diciendo que estaba leyendo el libro cien años de perdón. La Sra. Nazario borró al peticionario de su cuenta de *Facebook* e *Instagram*[7].

(Énfasis nuestro).

Tras varias incidencias procesales, el 12 de julio de 2016, el señor Ruiz presentó una moción mediante la cual solicitó la adjudicación sumaria del caso. En su escrito, sostuvo que no existía controversia de hecho alguna y que solo surgía una controversia de derecho. Adujo que, aun si la conducta exhibida por él hubiera sido constitutiva de hostigamiento sexual, lo cual negó, por tratarse de una primera ofensa, el *Reglamento de conducta y medidas disciplinarias del Municipio de San Juan* establecía que la medida disciplinaria correspondiente era una suspensión de empleo y sueldo de 10 días. Además, reiteró que no se había configurado la violación a la norma de conducta núm. 49, la cual prohibía poner en peligro la vida y seguridad de otras personas empleadas de forma negligente o deliberada. Sobre ello, añadió que esta violación no fue señalada originalmente en el informe de investigación realizado, sino que fue añadida posteriormente en la carta de intención de destitución.

El 12 de agosto de 2016, el Municipio presentó su oposición a la solicitud del señor Ruiz y, a su vez, solicitó que el caso fuese resuelto

---

[7] *Véase*, apéndice del recurso, a la pág. 182.

sumariamente a su favor[8]. Adujo que de los hechos incontrovertidos expuestos en la moción del señor Ruiz, los cuales surgían de los documentos adjuntados a la misma, así como de las propias admisiones de parte, se establecía claramente el patrón de hostigamiento sexual y acoso desplegado por el señor Ruiz en contra de una compañera de trabajo. Sostuvo que entre dichas infracciones se encontraba la realización de comentarios inapropiados hacia la compañera durante un periodo extendido de tiempo; el evento mediante el cual el señor Ruiz, en el lugar de trabajo, agarró a la compañera sin su consentimiento, le dijo que "se dejara llevar" e intentó besarla; y el envío al celular de la perjudicada de una foto de su pene en erección, con un mensaje que leía "así me tienes"[9].

El Municipio expuso que del expediente surgía cómo dichos actos llevaron a la perjudicada a presentar una querella escrita en el Municipio; solicitar una orden de protección contra el señor Ruiz ante el Tribunal de Primera Instancia; y, a someter una querella ante la Policía de Puerto Rico.

En cuanto a la conducta núm. 49, el Municipio arguyó que los hechos incontrovertidos demostraban cómo el patrón de hostigamiento sexual y acoso contra su compañera de trabajo fue incrementando en mensajes y comentarios inapropiados, al punto de que físicamente la agarró e intentó besarla. Sostuvo que dicha progresión de actos evidenciaba que el señor Ruiz había puesto en peligro la vida y la seguridad de la compañera de trabajo de manera negligente o deliberada, según prohibía la norma núm. 49, la cual acarrea la destitución inmediata del empleado.

Tras múltiples incidencias procesales, el 6 de junio de 2023, la CASP adjudicó las sendas solicitudes de disposición sumaria y emitió su *Resolución*[10]. En ella, confirmó la determinación tomada por el Municipio. Concluyó que, si bien como norma general las primeras ofensas no acarreaban la destitución, de conformidad con el reglamento de conducta

---

[8] *Véase*, apéndice del recurso, a las págs. 550-575.

[9] *Íd.,* a las págs. 221-224. En las referidas páginas se encuentran las capturas de pantalla de la comunicación telefónica entre el señor Ruiz y la querellante del 17 de junio de 2014.

[10] *Íd.,* a las págs. 1-42.

del Municipio, dicha medida sí procedía en circunstancias excepcionales; es decir, cuando el acto resultara de tal naturaleza que revelara una actitud o detalle de carácter, tan lesivo a la paz y al buen orden del patrono que constituiría una imprudencia esperar su reiteración para separarle del puesto. De igual forma, concluyó que el señor Ruiz había incurrido en violación a las normas de conducta prohibida núm. 1(e), 6, 23(b), (c), (d), (e), y la 49.

Inconforme con la determinación de la CASP, el señor Ruiz presentó una solicitud de reconsideración el 26 de junio de 2023[11]. El 7 de julio de 2023, notificada en esa fecha, la CASP emitió su *Resolución* y denegó la solicitud de reconsideración[12].

Aun inconforme, el 4 de agosto de 2023, el señor Ruiz instó este recurso y formuló los siguientes señalamientos:

> Erró la comisión en Pleno al determinar que "EL APELANTE incurrió en conducta constitutiva de hostigamiento sexual en el empleo y la medida disciplinaria de destitución fue correcta", cuando la Conducta Prohibida Número 23, contenida en el Reglamento de Personal del MSJ, establece que la sanción correspondiente al hostigamiento sexual es la suspensión de empleo y sueldo por 10 días.

> Erró la comisión al determinar que se configuró la infracción a la Norma de Conducta Prohibida número 49, contenida en el Reglamento de Personal de MSJ, sin que la parte Apelada-Recurrida, quien es la parte sobre la cual recae el peso de la prueba de probar la corrección de la medida disciplinaria, presentara prueba clara, robusta y convincente que estableciera la configuración a la infracción a dicha norma, que requiere "[p]oner en peligro la vida y seguridad de otros empleados o personas de forma negligente o deliberada."

(Énfasis omitido).

Por su parte, el 5 de septiembre de 2023, el Municipio presentó su oposición.

Con el beneficio de la comparecencia de las partes, resolvemos.

---

[11] *Véase*, apéndice del recurso, a las págs. 43-54.

[12] *Íd.*, a las págs. 55-57.

II

A

La Constitución del Estado Libre Asociado de Puerto Rico, en su Artículo II, Sección 1, establece que la dignidad del ser humano es inviolable y prohíbe el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas. De conformidad con este mandato constitucional, la Asamblea Legislativa ha aprobado legislación dirigida a implantar la política pública del Estado contra el discrimen, que incluye el discrimen por razón de sexo.

Con el fin de poner en vigor el mandato constitucional, el Legislador promulgó, entre otras, la Ley Núm. 17-1988, según enmendada, intitulada *Ley para prohibir el hostigamiento sexual en el empleo*, 29 LPRA secs. 155-155p. Este estatuto reconoce el hostigamiento sexual como una modalidad de discrimen por razón de sexo que, a su vez, atenta contra la dignidad del ser humano, según protegida por la Constitución de Puerto Rico. Ahora bien, a pesar de que esta legislación protege a toda persona independientemente de su género, la Asamblea Legislativa reconoció que la víctima tiende a ser la mujer. "Ello en parte, por la visión androcéntrica que lamentablemente aun permea en nuestra sociedad"[13]. L.F. Estrella Martínez, *Equidad laboral para la mujer: Reflexiones desde Puerto Rico*. San Juan, Puerto Rico, Ediciones Situm 2021, pág. 23.

La Ley Núm. 17 también reconoce expresamente que existen varias modalidades del hostigamiento sexual en el empleo. Al respecto, dispone:

> El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, el uso de herramientas multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:

---

[13] El androcentrismo se refiere a la visión del mundo y de las relaciones sociales centrada en el punto de vista masculino. Véase, *Diccionario de la Lengua Española*, https://dle.rae.es/androcentrismo (última visita 25 de septiembre de 2023).

(a) Cuando el someterse a dicha conducta se convierte de forma implícita en un término de condición del empleo de una persona.

(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.

Art. 3, 29 LPRA sec. 155b.

La doctrina jurídica relacionada con este tema reconoce que existen dos modalidades del hostigamiento sexual en el empleo. Los primeros dos incisos de la Ley Núm. 17, antes transcritos, aluden a la modalidad de hostigamiento sexual equivalente o *quid pro quo*. Esta modalidad cobija las instancias en las que "el sostenimiento o el rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo." *Rosa Maisonet v. ASEM*, 192 DPR 368, 381 (2015).

La segunda modalidad, recogida en el inciso c de la norma, preceptúa la modalidad de hostigamiento sexual por ambiente hostil. Esta modalidad presupone la concurrencia de una conducta sexual no deseada que interfiere, de manera irrazonable, con el sano desempeño del empleado o empleada en su trabajo, lo que redunda en un ambiente ofensivo. *Íd.*; *Rodríguez Meléndez v. Sup. Amigo, Inc.*, 126 DPR 117, 131-132 (1990).

Con relación a esta segunda modalidad, que es la que nos concierne en este caso, el Tribunal Supremo de Puerto Rico ha expresado que el hostigamiento sexual puede afectar el funcionamiento y la efectividad de la víctima en el empleo, desalentar al empleado o empleada a permanecer en el mismo y dificultarle el progreso en su carrera. Véase, *S.L.G. Afanador*

*v. Roger Electric Co., Inc.*, 156 DPR 651, 662 (2002)[14]; *In re Robles Sanabria*, 151 DPR 483, 492 (2000)[15].

Recientemente, en *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022), el Tribunal Supremo, por voz del Juez Asociado Señor Estrella Martínez, reiteró la política pública prevaleciente en cuanto al enérgico rechazo al hostigamiento sexual en el empleo.

> El hostigamiento sexual laboral es un mal que requiere la pronta intervención y acción del patrono para mitigar la magnitud de sus consecuencias. El Gobierno de Puerto Rico, como patrono, no está exento de tal obligación y responsabilidad. Especialmente, como en el caso que nos ocupa, cuando la adopción de medidas protectoras preventivas tiene que implantarse oportunamente. La fuerte política en contra del hostigamiento así se lo exige.

*Casillas Carrasquillo v. ELA*, 209 DPR, a la pág. 243.

En ese mismo caso, y en su opinión de conformidad, la Jueza Presidenta Señora Oronoz Rodríguez consignó como sigue.

> Desde la perspectiva de las ciencias de la conducta, el hostigamiento sexual es aquel comportamiento que menosprecia, degrada o humilla a una persona sobre la base de su género real o percibido, expresión de género u orientación sexual. Es decir, **el hostigamiento sexual frecuentemente causa dolor y sufrimiento**. Sus víctimas lo perciben como "ofensivo, molesto, humillante, intimidante, vergonzoso, estresante y aterrador". (Traducción suplida). Incluso, estudios demuestran que cuando el hostigamiento sexual deshumaniza y debilita a sus víctimas, provoca estragos tales como enfermedades mentales y físicas relacionadas con el estrés, como también el trastorno de estrés postraumático.
>
> Cabe mencionar que esta conducta también desestabiliza los centros de trabajo. En ese sentido, el hostigamiento sexual "interf[iere] de forma deliberada o involuntaria con el desempeño y las aspiraciones profesionales al crear un entorno intimidante, hostil, abusivo u ofensivo que erosiona la confianza de las víctimas y hace que sea más difícil lograrlo". (Traducción suplida). De igual forma, se configuran una serie de dinámicas nocivas que inciden indudablemente en las operaciones de la empresa, negocio o industria.

*Íd.*, a las págs. 257-258. (Énfasis en el original; notas al calce omitidas).

---

[14] En ese caso, la víctima del hostigamiento sexual era un hombre, que fue hostigado repetidamente por su supervisor. Se trató de contactos físicos no deseados, manifestaciones soeces, roce de genitales, etc. *S.L.G. Afanador v. Roger Electric Co., Inc.*, 156 DPR, a la pág. 656, n. 2.

[15] En ese caso, se trataba de un juez municipal. Los actos de hostigamiento sexual fueron dirigidos a su secretaria (comentarios sugerentes sobre su vestimenta, su cuerpo, etc.) y a una jueza municipal. El Tribunal Supremo concluyó que medió hostigamiento sexual, por lo que ordenó su destitución.

De otra parte, no cabe duda de que las particularidades de la causa de acción por hostigamiento sexual en el empleo, en su modalidad de ambiente hostil, hacen que la misma no sea fácilmente discernible, por lo que la ley establece que, para determinar si una conducta constituye hostigamiento sexual en el empleo, se considerará la totalidad de las circunstancias en que ocurrieron los hechos. Es decir, es una determinación que se hace caso a caso. Art. 4 de la Ley Núm. 17, 29 LPRA sec. 155c.

Por razón de ello, se ha dispuesto que, por su propia naturaleza, el ambiente hostil involucra varios actos acaecidos a través de un período de tiempo, que crean un ambiente de tal naturaleza pernicioso como para violar la ley. A esos efectos, en *In re Robles Sanabria*, 151 DPR*, a la pág. 500, el Tribunal Supremo expresó que:

> Para establecer un caso *prima facie* de hostigamiento sexual por ambiente hostil, la parte promovente de la acción debe probar que ha ocurrido más de un incidente de conducta sexual ofensiva. Un acto aislado o un mero 'piropo', aunque pudiera ser no deseado, no origina una causa de acción bajo esa modalidad. De ahí que se diga que el hostigamiento por ambiente abusivo se caracteriza por su multiplicidad.

Ahora bien, el Tribunal Supremo ha reconocido que existen excepciones a este requisito sobre la multiplicidad de actos. Reconoce que existen actos de tal magnitud y ofensa que justifican que un solo acto sea suficiente para configurar una causa de acción de hostigamiento sexual en su vertiente de ambiente hostil. Veamos.

En *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR 1001 (2012), el Tribunal Supremo discutió tanto la Ley Núm. 17-1988, como la Ley Núm. 3-1998, conocida como *Ley de hostigamiento sexual en las instituciones de enseñanza*, 3 LPRA sec. 149, *et seq.*, que prohíbe el hostigamiento sexual en las instituciones de enseñanza en Puerto Rico.

En ese caso, un profesor universitario hizo acercamientos no deseados a un exestudiante suyo (le acarició la mano, lo recostó hacia sí, le lamió una oreja, etc.). El Tribunal Supremo, por voz de la Jueza Asociada Señora Pabón Charneco, validó el despido del profesor, **aunque esta**

**había constituido una primera falta y el incidente con el estudiante solo duró unos minutos**. El Tribunal dispuso: "Aunque es cierto que el estudiante eventualmente mejoró su promedio académico **y no hubo hostigamiento en más de una ocasión**, **el acercamiento ocurrido fue lo suficientemente severo e invasivo para no exigir una multiplicidad de actos como hizo el Tribunal de Apelaciones**." *U.P.R. Aguadilla v. Lorenzo Hernández*, 184 DPR, a la pág. 1028. (Énfasis nuestro).

En *Rosa Maisonet v. ASEM*, 192 DPR 368 (2015)[16], se trataba de un empleado que había hostigado sexualmente a otra empleada, que era su supervisada, durante horas laborables. El único incidente fue "una nalgada sonada en la cadera", mientras la empleada se encontraba en su área de trabajo despachando "de pie y doblada". *Íd.*, a la pág. 373. Nótese que, en ese caso, el panel de este Tribunal de Apelaciones que atendió el recurso había revocado a la ASEM y había concluido que se trataba de un acto aislado. El Tribunal Supremo, sin embargo, revocó a este foro intermedio y concluyó que ese único acto era lo suficientemente grave como para justificar el despido del empleado agresor.

De otra parte, en *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 DPR 643 (1994), el Tribunal Supremo confirmó el despido de un empleado que incurrió en conducta conducente a hostigamiento sexual, aun cuando la misma fue la primera y única ofensa. Se trató de que el empleado impidió la salida del baño a otra empleada, mientras le requería que aceptara su invitación de salir con él fuera de horas de trabajo. "La empleada expresó sentirse humillada ya que su libertad fue restringida. En nuestro análisis, este Tribunal expresó que la actuación del empleado era de tal naturaleza que el patrono debía tomar acción inmediata para conservar la paz y el

---

[16] Véase, además, *Hernández Vélez v. Televicentro*, 168 DPR 803 (2006). En ese caso, un camarógrafo de Televicentro hizo manifestaciones de índole sexual a una persona que no era empleada, sino contratista del canal. Las manifestaciones culminaron con que el empleado se sacó su miembro del pantalón. El Tribunal Supremo resolvió el caso a favor de Televicentro, por un asunto de responsabilidad civil, no por el tema del hostigamiento. No obstante, caracterizó el acto como uno "despreciable, depravado y procesable [penalmente]". *Íd.*, a la pág. 817.

funcionamiento normal del lugar de empleo." *Indulac v. Unión*, 207 DPR 279, 301 (2021), que resume lo resuelto en *Delgado Zayas*.

De hecho, en *Indulac v. Unión*, el Tribunal Supremo validó un despido a raíz de una sola falta cometida por el empleado hostigador. Este había colocado una cámara de vídeo en la oficina de otra empleada y la grababa subrepticiamente. Denunciada la situación, el empleado fue despedido.

B

La Ley Núm. 81-1991, según enmendada, conocida como *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA secs. 4001, *et seq.*[17], establecía los deberes y responsabilidades de las personas empleadas en los municipios. En lo concerniente al caso del título, establecía que los funcionarios y empleados municipales debían observar, entre otras, normas de comportamiento correcto, cortés y respetuoso en sus relaciones con sus supervisores, compañeros de trabajo y ciudadanos. Art. 11.011(b)(6), 21 LPRA sec. 4561(b)(6). Igualmente, y de manera explícita, la Ley Núm. 81 disponía que los empleados municipales, independientemente del servicio al que pertenecieran o del estado legal que ostentaran, no incurrirían en conducta constitutiva de hostigamiento sexual en el empleo. Art. 11.011(b)(9), 21 LPRA sec. 4561(b)(9).

De conformidad con la Ley Núm. 17-1988 y la Ley Núm. 81-1991, el Municipio Autónomo de San Juan adoptó el *Reglamento sobre hostigamiento sexual en el empleo del Municipio de San Juan*[18]. En él se definieron ciertas conductas y situaciones que constituyen hostigamiento sexual, tales como la utilización de lenguaje obsceno de naturaleza sexual,

---

[17] La Ley Núm. 81-1991 fue derogada por la Ley Núm. 107-2020, conocida como *Código Municipal de Puerto Rico*, 21 LPRA secs. 7001, *et seq.* No obstante, los hechos en este caso ocurrieron durante la vigencia de la Ley Núm. 81. Apuntamos, además, que el Capítulo VI del Código Municipal, que trata de los recursos humanos de los municipios, establece en su Art. 2.052 los deberes y obligaciones de los funcionarios y empleados. En particular, el Art. 2.052(b)(9) prohíbe tajantemente el hostigamiento sexual y laboral en el empleo. 21 LPRA sec. 7241(b)(9).

[18] El referido reglamento fue aprobado el 24 de agosto de 2001, mediante la Orden Ejecutiva Núm. JS 007, Serie 2001-2002. Ello, con el fin de establecer la política pública y el procedimiento de querellas de hostigamiento sexual en el empleo en el Municipio Autónomo de San Juan.

chistes de mal gusto o proposiciones de naturaleza sexual. Además, establecía que la exposición de genitales se consideraba conducta constitutiva de hostigamiento sexual. *Véase*, Art. VI(2) del Reglamento.

También, el Art. VI del Reglamento disponía que, para determinar si la conducta imputada constituía o no hostigamiento sexual, se tomaría en consideración la totalidad de las circunstancias en que ocurrieron los hechos, y la determinación de la legalidad de la acción se haría basada en los hechos de cada caso.

De otra parte, el Art. VIII disponía el procedimiento para investigar, presentar y adjudicar las querellas de hostigamiento sexual. En lo pertinente, especificaba que, luego de finalizada la investigación relacionada a la querella, el investigador rendiría un informe que debía estar acompañado del expediente del caso y de sus recomendaciones. Entre dichas recomendaciones debía surgir si existía o no causa suficiente para iniciar el procedimiento de medidas disciplinarias, a tenor con lo dispuesto en el mismo reglamento.

Así pues, el Art. XII del Reglamento disponía que, de determinarse que había mediado hostigamiento sexual, se sancionaría a la persona empleada. Dichas sanciones o medidas disciplinarias incluían la suspensión de empleo y sueldo, o la destitución, según dispuesto en el *Reglamento de conducta y acciones disciplinarias del Municipio de San Juan*.

A su vez, el reglamento de conducta aplicable a los hechos de este caso era el *Reglamento de conducta y medidas disciplinarias del Municipio de San Juan* (Reglamento de Conducta) aprobado el 7 de mayo de 2007. Este fue promulgado con el fin de establecer las normas que regirían los procedimientos relacionados a la imposición de medidas disciplinarias en los casos en que un empleado incurriera en alguna conducta prohibida de conformidad con la Ley de Municipios Autónomos.

En lo pertinente al caso del título, en su Anejo B, el Reglamento de Conducta exponía las conductas prohibidas y sus correspondientes medidas disciplinarias. Entre ellas, las conductas prohibidas núm. 23 y 49:

23. Conducta o actuación que constituya hostigamiento sexual, tal como:

.        .        .        .        .        .        .        .

(b) Contacto físico o sugestivo no deseado en cualquier parte del cuerpo, tales como: agarrar, buscar a tientas, besar, apretar, acariciar, rozar, tocar, dar palmadas, pellizcar, dar masaje o manosear, abrazar, impedir o bloquear el paso.

(c) Verbal - Hacer comentarios sobre atributos físicos o utilizar epítetos, chistes o preguntas de índole sexual, difundir rumores, insinuaciones o hacer comentarios acerca de la vida social o sexual de alguna persona.

(d) Visual - Realizar actos no verbales, tales como: gestos sexuales sugestivos, mostrar objetos, fotos, dibujos o afiches sexualmente explícitos, miradas lascivas, cartas, regalos o material de naturaleza sexual, utilizar los medios electrónicos para difundir mensajes obscenos u ofensivos.

(e) Ambiente de trabajo – Promover un ambiente de trabajo sexualmente ofensivo, amenazante o intimidante.

.        .        .        .        .        .        .        .

49. Poner en peligro la vida y seguridad de otros empleados o personas de forma negligente o deliberada.

III

El argumento principal del recurrente es que la CASP erró al determinar que él había incurrido en conducta constitutiva de hostigamiento sexual en el empleo y, así, validar su destitución. Arguye que, de conformidad al *Reglamento de conducta y medidas disciplinarias del Municipio de San Juan*, la medida disciplinaria apropiada para una primera infracción a la conducta prohibida núm. 23 era la suspensión de empleo y sueldo por un término de 10 días.

El recurrente también propone que la CASP hubo incidido al determinar que se había configurado la infracción a la conducta prohibida núm. 49. En cuanto a ello, alegó que el Municipio no había aportado prueba suficiente en derecho que estableciera que él había puesto en riesgo la vida o seguridad de la empleada de manera negligente o deliberada.

Por tratarse de asuntos estrechamente relacionados, discutiremos los errores señalados en conjunto.

En su recurso, el recurrente nunca negó que hubiera incurrido en la violación a la conducta número 23, la cual prohíbe el hostigamiento sexual en el trabajo. Admitida la violación a la conducta proscrita, arguyó que, por tratarse de una primera ofensa, la medida disciplinaria que ordenaba el reglamento era una suspensión de empleo y sueldo por 10 días.

En cuanto a la conducta prohibida núm. 49, razonó que el Municipio le había imputado la violación a la misma como subterfugio para destituirlo de su puesto. Planteó que, contrario a lo imputado, la vida de la querellante nunca se había visto amenazada ni en peligro. Nos invitó a que, al evaluar dicha conducta - consistente en un patrón de comentarios inapropiados de contenido sexual, el acto de agarrar a la apelante por los hombros e intentar besarla, y enviarle una foto de su genital, contra la voluntad expresa de la querellante - concluyamos que tales acciones no pusieron en peligro la vida de la compañera de trabajo, de manera negligente o deliberada.

Recalcó que, de conformidad a la jurisprudencia del Tribunal Supremo de Puerto Rico, le correspondía al Municipio establecer la justa causa para su despido mediante prueba clara, robusta y convincente. Subrayó que, por ser un empleado de carrera, ostentaba un interés propietario sobre su empleo, por lo que solo podía ser destituido por justa causa, previa formulación de cargos y apercibimiento de su derecho a solicitar una vista previa.

Por su parte, el Municipio planteó que la resolución de la cual se solicita esta revisión judicial fue correcta en derecho y basada en evidencia sustancial. Llamó la atención al hecho de que el señor Ruiz tuvo acceso a la vista informal que su derecho a un debido proceso de ley le garantizaba. La vista se celebró el 5 de agosto de 2014, ante la Oficial Examinadora designada por el Municipio. Señaló que, luego de recibida y aquilatada la prueba, la Oficial Examinadora emitió un minucioso informe, que forma

parte del expediente de la CASP, y del cual surgen las admisiones y disculpas del recurrente.

Además, el Municipio planteó que había logrado establecer que la empleada sí se había sentido en peligro. Inclusive, fue tal el grado de peligrosidad que la empleada no tan solo se querelló con su patrono, sino que acudió a la Policía y al tribunal en busca de un remedio que ordenase el alejamiento de su acosador de su entorno inmediato.

De igual manera, el Municipio rebatió las alegaciones del recurrente en cuanto a que la empleada no había corrido peligro, pues supuestamente ella "solo comunicó sentirse triste y ansiosa". Esa trivialización de los efectos del hostigamiento sexual sufridos por la empleada fue debidamente refutada por el Municipio al hacer referencia a la importancia de la salud mental y a los efectos nocivos del hostigamiento sexual en la víctima. Finalmente, el Municipio reiteró que tomar a una compañera de trabajo por los hombros y acercarse a darle un beso en la boca en contra de su voluntad y, posteriormente, enviarle una foto de su pene, contra su voluntad expresa, constituía una evidente amenaza a la seguridad personal e integridad física y emocional de esta mujer.

Evaluados los argumentos de las partes comparecientes, así como del estudio del tracto procesal y de la totalidad del expediente de este caso, no albergamos duda de que procede la confirmación de la resolución de la CASP.

Tal como discutimos, para establecer un caso *prima facie* de hostigamiento sexual por ambiente hostil, nuestro ordenamiento requiere que la parte promovente de la acción establezca que ha ocurrido más de un incidente de conducta sexual ofensiva. Como norma general, un acto aislado o un mero piropo, aunque pudiera ser no deseado, no configura una causa de acción bajo esa modalidad de hostigamiento sexual. Ahora bien, también expusimos que el Tribunal Supremo de Puerto Rico ha reconocido excepciones a este requisito sobre la multiplicidad de actos. Es decir, que nuestro ordenamiento también reconoce que existen actos de tal

magnitud y ofensa que justifican que un solo acto sea suficiente para configurar una causa de acción de hostigamiento sexual en su vertiente de ambiente hostil.

En el caso del título, no existe duda de que el recurrente violó la conducta prohibida núm. 23, constitutiva de hostigamiento sexual. Según surge del interrogatorio suscrito por el señor Ruiz, este le sugirió a su compañera de trabajo que pusiera un tubo en su oficina y le hizo ciertos comentarios de índole sexual, entre otros, que su lengua era *sexy*[19]. Además, admitió haber enviado la foto de su pene a su compañera de trabajo; ello, el día después de que, en el lugar de trabajo, la agarrase por los hombros e intentara besarla[20].

Ciertamente, este caso no trata de un mero incidente aislado, sino de un patrón de conducta que fue intensificándose a tal nivel que el señor Ruiz intervino físicamente con la víctima en el lugar de empleo de ambos. Peor aún, luego de ese incidente, y tras la querellante manifestar en múltiples ocasiones sentirse incómoda con los avances del señor Ruiz, él consideró apropiado enviarle una foto de su pene en erección, con el mensaje "así me tienes"[21].

En vista de ello, resulta evidente que medió hostigamiento sexual hacia la querellante, en sus modalidades de contacto físico, verbal y visual, lo cual generó un ambiente de trabajo sexualmente ofensivo, amenazante e intimidante para ella.

En cuanto a la norma de conducta prohibida núm. 49, concluimos que la CASP no erró y, por el contrario, contó con todos los elementos y la prueba necesaria para determinar que el señor Ruiz puso en riesgo la vida de la víctima. Según discutimos, el hostigamiento sexual frecuentemente causa dolor y sufrimiento. Sus víctimas lo perciben como ofensivo, molesto, humillante, intimidante, vergonzoso, estresante y aterrador. Inclusive, los

---

[19] *Véase*, apéndice del recurso, a la pág. 205.

[20] *Íd.*

[21] *Íd.,* a la pág. 221.

estudios demuestran que el hostigamiento sexual deshumaniza y debilita a sus víctimas, provoca estragos tales como enfermedades mentales y físicas relacionadas con el estrés, como también el trastorno de estrés postraumático[22].

En este caso, la querellante fue sometida a un patrón violento de acoso, que escaló desde comentarios inapropiados a contacto físico no deseado, y a exposiciones deshonestas contra su voluntad expresa. Ello, cometido por un empleado de carrera del Municipio, quien al reconocer que había incurrido en los referidos actos expresó que "no la veía como alguien que fuera a hablar de esto", sino "como una persona adulta" que no se quejaría[23].

Nótese que, previo a que el comportamiento del recurrente escalara a contacto físico y al envío de la foto explícita, la empleada no había tomado acción administrativa o legal alguna. Nos queda claro que el acto de la empleada al acudir a querellarse ante su patrono y a buscar una orden de protección demuestran que ella se sintió amenazada. Así pues, concluimos que el Municipio, dado el patrón desplegado por el recurrente, concluyó correctamente que se estaba poniendo en riesgo la vida de la empleada y que no podía esperar a un siguiente incidente para tomar la determinación de destituir al señor Ruiz.

Contrario a lo planteado por el recurrente, en este caso no se destituyó al recurrente por razón de una primera ofensa de hostigamiento sexual, sino que, a la luz de los hechos y la totalidad de la prueba que obraba en el expediente, la CASP concluyó correctamente que el patrón de conducta desplegado por el recurrente puso en riesgo la vida de la compañera de trabajo, lo cual quedaba expresamente prohibido por la conducta núm. 49. Este cargo le fue formulado y advertido al recurrente en la carta de intención de destitución de conformidad a los precitados reglamentos de conducta del Municipio. De igual manera, queda claro que

---

[22] Véase, *Casillas Carrasquillo v. ELA*, 209 DPR, a las págs. 257-263, opinión de conformidad de la Jueza Presidenta Señora Oronoz Rodríguez, notas al calce 2-14.

[23] *Véase*, apéndice del recurso, a la pág. 206.

el señor Ruiz tuvo la oportunidad de rebatir dicho cargo en la vista informal que le fue concedida, en virtud de su derecho al debido proceso de ley.

En este caso, se aplicó la medida drástica de la destitución porque el recurrente incurrió en actos drásticos contra la dignidad de su compañera de trabajo. Por tanto, la CASP no erró al confirmar la determinación del Municipio de que el señor Ruiz había cometido actos constitutivos de hostigamiento sexual y había puesto en riesgo la vida de la compañera de trabajo; actos que acarreaban la destitución a la primera falta.

IV

En mérito de lo antes expuesto, este Tribunal confirma la *Resolución* emitida y notificada por la Comisión Apelativa del Servicio Público el 6 de junio de 2023.

El juez Hernández Sánchez emite voto explicativo.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JOSÉ A. RUIZ PÉREZ,<br><br>Recurrente,<br>v.<br><br>MUNICIPIO AUTÓNOMO DE SAN JUAN,<br><br>Recurrida. | KLRA202300397 | REVISIÓN procedente de la Comisión Apelativa del Servicio Público.<br><br>Caso núm.:<br>2014-09-0490<br>(2023 CA 000332).<br><br>Sobre:<br>retención. |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**VOTO EXPLICATIVO DEL JUEZ HERNÁNDEZ SÁNCHEZ**

En San Juan, Puerto Rico, a 26 de septiembre de 2023.

En el caso KLRA202300421, como juez ponente, determiné confirmar a la Comisión Apelativa del Servicio Público (CASP) en cuanto a que la medida disciplinaria que le correspondía al recurrido era la suspensión de empleo y sueldo por cada una de las infracciones que se le imputó conforme al *Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan.*

Sin embargo, en el caso KLRA202300397 estoy conforme con la mayoría en confirmar a la CASP en aplicarle la medida más drástica de destitución al recurrente. Lo anterior ya que en el caso KLRA202300397 se concluyó que el recurrente había incurrido en violaciones de varias normas de conducta incluyendo el inciso 49 de conductas prohibidas según el *Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan.*[1] Dicha conducta prohibida conlleva la destitución por la primera infracción.

En el caso KLRA202300421, la violación al inciso 49 de las normas de conducta prohibidas no se le imputó al recurrido. Es por ello, que en dicho caso procedía la suspensión de empleo y sueldo y en el caso KLRA202300397 la destitución del recurrente.

Notifíquese.

Juan Hernández Sánchez
Juez de Apelaciones

---

[1] El inciso 49 constituye la conducta prohibida de poner en peligro la vida y seguridad de otros empleados o personas de forma negligente o deliberada.

Número identificador

SEN2023_____