Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| JESÚS SANTIAGO RUIZ<br><br>Recurrido<br><br>v.<br><br>MUNICIPIO DE SAN JUAN<br><br>Recurrente | TA2025RA00078 | REVISIÓN JUDICIAL Procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm.: 2019-11-0217<br><br>Sobre: Retención Validez de la destitución por hostigamiento sexual |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de septiembre de 2025.

Mediante recurso de revisión administrativa, el Municipio de San Juan (Municipio o recurrente) nos solicita que revisemos la *Resolución* emitida y notificada el 7 de mayo de 2025 por la Comisión Apelativa del Servicio Público (CASP).[1] A través de dicho dictamen, la CASP declaró *Ha Lugar* la *Apelación* presentada por el Sr. Jesús Santiago Ruiz (señor Santiago Ruiz o recurrido) y, consecuentemente, ordenó al recurrente a dejar sin efecto la medida disciplinaria de destitución de empleo impuesta al recurrido, sustituyéndola por una de suspensión de empleo y sueldo por diez (10) días laborables. Asimismo, la CASP ordenó la reinstalación del señor Santiago Ruiz a su puesto de trabajo en el Municipio de San Juan.

Por las razones que expondremos a continuación, revocamos el dictamen recurrido.

---

[1] SUMAC TA, Entrada Núm. 1, Apéndice *Resolución CASP*.

-I-

El 25 de noviembre de 2019, el recurrido presentó una *Apelación* ante la CASP.[2] En esencia, sostuvo que se desempeñaba como Gerente de División del Departamento de la Policía y Seguridad Pública del Municipio de San Juan. Indicó que el 22 de noviembre de 2019, el recurrente le notificó que, a raíz de una querella instada en su contra por actos y hechos constitutivos de hostigamiento sexual en el empleo ocurridos durante los años 2016 y 2019 en contra de la señora Evelyn Rodríguez Heredia (señora Rodríguez Heredia), decidió destituirlo de su puesto. Santiago Ruiz negó haber incurrido en los referidos actos y adujo que se trataba de una represalia por haber instado una querella el 18 de septiembre de 2019 en contra de la señora Rodríguez Heredia. Arguyó que el recurrente investigó deficientemente las imputaciones y no aplicó el principio de disciplina progresiva. Consecuentemente, solicitó a la CASP que celebrara una vista administrativa y revocara la determinación del Municipio.

El 11 de febrero de 2020, el Municipio presentó una *Contestación a la Apelación*.[3] En síntesis, alegó que, el 10 de octubre de 2019, notificó al recurrido personalmente sobre la formulación de cargos disciplinarios en su contra[4], así como de su intención de destituirlo de su puesto. Particularmente, el Municipio le imputó al señor Santiago Ruiz incurrir en las siguientes Normas de Conducta Prohibida del Reglamento de Conducta:

1. Norma de Conducta Prohibida Núm. 1 (e): No cumplir con las órdenes ejecutivas o administrativas emitida por el Alcalde o sus Representantes Autorizados (Autoridad Nominadora).

2. Norma de Conducta Prohibida Núm. 6: Comunicarse verbalmente o por escrito de forma grosera y/o irrespetuosa o usar lenguaje ofensivo, amenazante, o indecoroso en el trabajo.

---

[2] SUMAC TA, Entrada Núm. 1, Apéndice Núm. 1.
[3] *Íd.*, Apéndice Núm. 2.
[4] Específicamente, se le imputó infracciones al Código de Administración de Asuntos Personal del Municipio de San Juan, al Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan (Reglamento de Conducta) y al Reglamento de Hostigamiento Sexual en el Empleo del Municipio de San Juan (Reglamento de Hostigamiento Sexual).

3. Normas de Conducta Prohibida Núm. 23 (a), (c), (e) y (f): Conducta o actuación que constituya hostigamiento sexual, tal como:

   a. Favores sexuales – solicitar y ofrecer explícita o implícita [sic] favores sexuales.

   c. Verbal – Hacer comentarios sobre atributos físicos o utilizar epítetos, chistes o preguntas de índole sexual, difundir rumores, insinuaciones o hacer comentarios acerca de la vida social o sexual de alguna persona.

   e. Ambiente de trabajo – Promover un ambiente de trabajo sexualmente ofensivo, amenazante o intimidante.

   f. Represalias – Tomar acción contra algún empleado que presente una querella de hostigamiento sexual, participe de alguna investigación relacionada, o se oponga a acciones discriminatorias relacionadas.

4. Norma de Conducta Prohibida Núm. 56: En caso de cualquier otra conducta impropia o en detrimento de los mejores intereses del Municipio se aplicarán medidas disciplinarias de acuerdo a su importancia y gravedad, aún cuando la infracción no haya sido especificada en la Tabla de Normas de Conducta y [M]edidas Disciplinarias.

Igualmente, expuso que, en el proceso contra el recurrido, se celebró una vista administrativa el 17 de octubre de 2019 a la que el señor Santiago Ruiz compareció acompañado de representación legal. Allí, según argüido, el recurrido tuvo amplia oportunidad para refutar los cargos y la evidencia que fueron presentados en su contra. El Municipio indicó que, habiéndose recibido la evidencia, la oficial examinadora asignada al caso rindió un informe en el que recomendó la destitución del señor Santiago Ruiz de su puesto; recomendación que fue acogida por la Autoridad Nominadora. Afirmativamente, expuso que la actuación impugnada fue correcta; que esta se hizo en cumplimiento con las disposiciones legales y los reglamentos aplicables; que el recurrido incurrió en las violaciones imputadas y que la sanción disciplinaria que le fue impuesta fue proporcional a los hechos cometidos por él.

El 3 de febrero de 2023, se celebró una vista pública ante la comisionada asociada a la que CASP asignó la apelación para fungir como

oficial examinadora, cuya minuta obra en el expediente ante nos.[5] Posteriormente, el 7 de mayo de 2025, la CASP emitió y notificó la *Resolución* recurrida.[6] Allí, se consignó el recibo del informe preparado por la Oficial Examinadora designada al caso el cual fue adoptado e integrado al dictamen.

En el referido informe, la oficial examinadora hizo un recuento del trasfondo procesal del asunto, así como de la vista celebrada ante la CASP. En específico, señaló que las partes estipularon toda la prueba documental[7] y el Municipio presentó prueba testifical, la cual fue reseñada por la oficial examinadora en su informe. Basándose en dicha evidencia, la oficial examinadora de la CASP formuló las siguientes determinaciones de hechos:

1. El [recurrido], en el año 2016[,] ejercía como Gerente de Recursos Humanos en el Departamento de Policía y Seguridad Pública del Municipio de San Juan.

2. Durante el año 2016, el [recurrido] incurrió en las siguientes actuaciones en relación a la Señora Evelyn Rodríguez Heredia, compañera de trabajo:

   a. en la Oficina del Comisionado, frente al escritorio del Director Auxiliar[,] el [recurrido] le dijo a la señora Evelyn Rodríguez Heredia que pensaba en ella con lo que tenía debajo del pantalón;
   b. le comentó a la señora Evelyn Rodríguez Heredia que le gustaría tener "algo por fuera" insinuando una relación extramarital;
   c. le envió mensajes de texto, le regalaba chocolates y le regaló un bolígrafo;
   d. le mencionó a la señora Evelyn Rodríguez Heredia que era tan linda como Fatmagul; y
   e. le mencionó a la señora Evelyn Rodríguez Heredia que le gustaba.

3. Las conductas establecidas en el inciso anterior provocaron que la señora Evelyn Rodríguez Heredia se sintiera frustrada, molesta, impotente, nerviosa y que sufriera daños a su salud emocional incluyendo ataques de pánico por lo que buscó asistencia psicológica.

4. El 8 de abril de 2019[,] el [recurrido] fue reubicado como Gerente de la División de Servicios Generales.

---

[5] SUMAC TA, Entrada Núm. 1, Apéndice Núm. 5.

[6] *Íd.*, Apéndice *Resolución CASP*.

[7] La prueba documental consistió en lo siguiente:
   **Exhibit 1 Conjunto:** Expediente disciplinario del recurrido.
   **Exhibit 2 Conjunto:** Orden Ejecutiva Núm. JS 007, Serie 2002-2002.
   **Exhibit 3 Conjunto:** Ordenanza Núm. 30, Serie 2006-2007.

5. El [recurrido] ocupando el puesto [de] Gerente de la División de Servicios Generales se quejó a la supervisora Carmen D. Rivera Casanova con relación a un trato hostil de la señora Evelyn Rodríguez Heredia.

6. El 18 de septiembre de 2019[,] la supervisora Carmen D. Rivera Casanova citó a la señora Evelyn Rodríguez Heredia para discutir la queja del [recurrido]. En esta reunión la señora Evelyn Rodríguez Heredia narró que su hostilidad respondía al patrón de hostigamiento que el [recurrido] tenía con ella.

7. El 18 de septiembre de 2019[,] la supervisora Carmen D. Rivera Casanova comunicó al Comisionado [C]oronel José Caldero lo ocurrido con la señora Evelyn Heredia Rodríguez [sic] y el [recurrido] y se inició el protocolo de hostigamiento sexual.

8. El 26 de septiembre de 2019[,] se le notificó al [recurrido] una carta de intención de medida disciplinaria mediante la cual se le notificó la intención de destituirle de su puesto de trabajo por haber incurrido en violaciones al Reglamento de Medidas Disciplinarias al incurrir en conducta constitutiva de hostigamiento sexual y se le suspendió de empleo, pero no de sueldo.

9. El 22 de noviembre de 2019 y luego de celebrada la vista informal correspondiente[,] el [recurrido] fue destituido de su puesto como Gerente de División por incurri[r] en conductas constitutivas de hostigamiento sexual.[8]

En adición, la oficial examinadora indicó que le otorgó entero crédito a la declaración de la señora Rodríguez Heredia y determinó que el recurrido incurrió en hostigamiento sexual laboral. Sin embargo, razonó que la medida disciplinaria aplicable por dicha conducta era de suspensión de empleo y sueldo por un término de diez (10) días.

Asimismo, determinó que no se presentó prueba sobre el cargo formulado en contra del recurrido por incurrir en la Norma de Conducta Prohibida Núm. 1 (insubordinación); en la Norma de Conducta Prohibida Núm. 23 (a) (hostigamiento sexual en la modalidad de solicitar favores sexuales); y en la Norma de Conducta Prohibida Núm. 23 (f) (hostigamiento sexual en la modalidad de represalias). También, encontró que no procedía el cargo formulado en relación con la Norma de Conducta Prohibida Núm. 6, ni aquel sobre la Norma de Conducta Prohibida Núm. 56.

---

[8] SUMAC TA, Entrada Núm. 1, Apéndice *Resolución CASP*, págs. 12-13.

Finalmente, la oficial examinadora entendió que el Municipio obvió aplicar sanciones progresivas, sino que aplicó- contrario al Reglamento de Conducta- la medida disciplinaria de último recurso. En ese sentido, recomendó a la CASP que declarara *ha lugar* la apelación presentada por el recurrido y ordenara la sustitución de la sanción impuesta por una de suspensión de empleo y sueldo por diez (10) días laborables, así como la reinstalación del recurrido a su puesto. De igual forma, recomendó que fueran satisfechos los ingresos dejados de recibir durante el tiempo que estuvo separado de su puesto con los haberes correspondientes a los diez (10) días laborables descontados, conforme a la medida disciplinaria.

El referido informe y su recomendación, fue adoptado *in totum* por la CASP y, cónsono con ello, emitió la *Resolución* objeto del presente recurso. Por consiguiente, varió la medida disciplinaria impuesta por una de suspensión de empleo y sueldo por diez (10) días laborables y ordenó la reinstalación al recurrido a su empleo, así como el reembolso de los ingresos dejados de devengar durante el término que estuvo destituido.

En desacuerdo con dicho dictamen, el 27 de mayo de 2025, el Municipio presentó una *Moción en Solicitud de Reconsideración*.[9] En síntesis, resaltó que el señor Santiago Ruiz ocupaba el puesto de Gerente de Recursos Humanos por lo que su actuación constituía una de mayor gravedad. Ello toda vez que dirigía la oficina llamada a implementar y garantizar el cumplimiento de la política pública del Municipio en contra del hostigamiento sexual. Esgrimió que se demostró que el recurrido intentó manipular los procesos a su favor al radicar una querella en contra de la señora Rodríguez Heredia y alegar que esta lo trataba de forma hostil. En adición, señaló que lo anterior constituía prueba de la infracción a la conducta prohibida de represalias. Abundó que la queja del recurrido en cuanto a que la señora Rodríguez Heredia lo trataba hostil era un acto de

---

[9] SUMAC TA, Entrada Núm. 1, Apéndice Núm. 6.

represalias dirigido a intimidar, castigar o desacreditarla por su negativa de corresponder a sus acercamientos.

También, indicó que la CASP erró al determinar que no se probó la insubordinación ya que, toda vez que ello constituye en no cumplir con las órdenes ejecutivas emitidas por la Autoridad Nominadora, al incurrir en hostigamiento sexual, el recurrido incumplió con el Reglamento de Hostigamiento Sexual que, a su vez, fue adoptado mediante una orden ejecutiva. En ese sentido, el recurrente sostuvo que el señor Santiago Ruiz incumplió con dicha orden ejecutiva y, así, incurrió en insubordinación.

En adición, señaló que el presente caso se trató de un patrón de conducta reiterada y no una primera infracción, como lo interpretó la CASP y por lo cual varió la sanción disciplinaria. Indicó que si bien el Reglamento de Conducta dispone que la sanción disciplinaria correspondiente a una primera infracción de hostigamiento sexual conlleva una suspensión de empleo y sueldo por diez (10) días laborables, la referida pieza reglamentaria autoriza a la Autoridad Nominadora a imponer la destitución del empleo de acuerdo con los hechos, las circunstancias y la gravedad de la conducta. En atención a ello, sostuvo que el Reglamento de Conducta aclara que las normas de sanción constituyen una guía orientadora.

Finalmente, indicó que la Norma de Conducta Prohibida Núm. 6 no es atendida por la Norma de Conducta Prohibida Núm. 23 (c). Ello toda vez que ambas normas versan sobre aspectos distintos y su aplicación concurrente no constituye una duplicidad de sanciones. Especificó que la Norma de Conducta Prohibida Núm. 6 atiende la manera irrespetuosa, ofensiva o grosera en la que se comunica un empleado, mientras que la Norma de Conducta Prohibida Núm. 23 (c) está dirigida a conductas de hostigamiento sexual. En ese sentido, expuso que la conducta del recurrido consistió en comunicaciones ofensivas y degradantes, además de tener

connotaciones sexuales, de manera que ambas faltas podían coexistir válidamente.

El 10 de junio de 2025, la CASP declaró *no ha lugar* la solicitud de reconsideración del Municipio. Inconforme con esta decisión, el 10 de julio de 2025, el recurrente acudió ante nos mediante recurso de epígrafe y señala la comisión de los siguientes errores:

> PRIMERO: La CASP cometió un serio y grave error de derecho al dejar sin efecto la destitución de Jesús Santiago Ruiz, a pesar de concluir que se demostraron los 10 actos de hostigamiento sexual en el empleo durante un periodo de tiempo de 2016 a 2019.

> SEGUNDO: La CASP erró en conclusión de derecho respecto a que no se demostró la violación de las Conductas Prohibidas Núm. 1(e), 6, 23(f) y 56.[10]

Ese mismo día, el Municipio instó una *Moción para que se Eleven los Autos Originales o en la Alternativa se Conceda un Plazo para Presentar el Exhibit 1*.[11] Sostuvo que, si bien no considera los hechos en controversia, el segundo señalamiento de error nos requiere revisar la prueba documental que la CASP tuvo ante sí, en particular, el Exhibit 1 Conjunto que consiste en el expediente disciplinario del recurrido y se trata de un documento voluminoso. Cónsono con ello, nos solicitó que ordenáramos a la CASP a que elevara el expediente administrativo o, en la alternativa, que le concediéramos un término razonable para solicitar el mismo.

Atendido el recurso, el 15 y 16 de julio de 2025, emitimos y notificamos, respectivamente, una *Resolución* en la que ordenamos a la CASP a que, dentro del término de cinco (5) días, sometiera una copia certificada del expediente administrativo.[12] Además, ordenamos al recurrido a presentar su posición dentro del término dispuesto en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B.

Tras presentar una solicitud de prórroga para presentar su oposición, petitorio que concedimos mediante *Resolución* emitida y

---

[10] SUMAC TA, Entrada Núm. 1.
[11] *Íd.*, Entrada Núm. 2.
[12] SUMAC TA, Entrada Núm. 4.

notificada el 12 de agosto de 2025,[13] el señor Santiago Ruiz presentó, el 27 del mismo mes y año, un *Alegato en Oposición a Recurso de Revisión Administrativa*.[14]

Cabe destacar que, el 9 de septiembre de 2025, emitimos y notificamos una *Resolución* en la que ordenamos nuevamente a la CASP a que sometiera una copia certificada del expediente administrativo dentro del término de tres (3) días.[15] Ello toda vez que la primera *Resolución* emitida a esos efectos fue devuelta al correo postal.[16] En respuesta, el 12 de septiembre de 2025, la CASP compareció a través de un escrito intitulado *Comparecencia Especial en Cumplimiento de Resolución* en el que presentó una copia certificada del expediente administrativo correspondiente al presente asunto.[17]

Con el beneficio de la comparecencia de todas las partes, así como del expediente administrativo, procedemos a disponer del presente recurso no sin antes exponer el marco jurídico aplicable.

-II-

*A.*

De entrada, el Artículo II, Sección 1, de la Constitución del Estado Libre Asociado de Puerto Rico, establece que la dignidad del ser humano es inviolable y prohíbe el discrimen por motivo de raza, color, sexo, nacimiento, origen o condición social, ideas políticas o religiosas. Art. II, Sec. 1, Const. PR, LPRA, Tomo 1.

Con ello en mente, se promulgó la Ley Núm. 17 de 22 de abril de 1988, según enmendada, mejor conocida como la *Ley para Prohibir el Hostigamiento Sexual en el Empleo*, 29 LPRA sec. 15 *et seq.* Categóricamente, esta ley declara que el hostigamiento sexual en el empleo es una forma de

---

[13] *Véase íd.*, Entradas Núm. 6 y 7.
[14] *Íd.*, Entrada Núm. 8.
[15] *Íd.*, Entrada Núm. 9.
[16] *Íd.*, Entrada Núm. 5.
[17] *Íd.*, Entrada Núm. 10.

discrimen por razón de sexo y, como tal, constituye una práctica ilegal que atenta contra la disposición constitucional. De igual forma, expone varias modalidades mediante las cuales se constituye conducta de hostigamiento sexual. En específico, el Artículo 3 dispone lo siguiente:

> El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado requerimientos de favores sexuales y cualquiera otra conducta verbal o física de naturaleza sexual o que sea reproducida utilizando cualquier medio de comunicación incluyendo, pero sin limitarse, al uso de herramientas de multimedios a través de la red cibernética o por cualquier medio electrónico, cuando se da una o más de las siguientes circunstancias:
>
> **(a)** Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
>
> **(b)** Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
>
> **(c)** Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante hostil u ofensivo. 29 LPRA sec. 155b.

Los primeros dos (2) incisos antes expuestos constituyen la modalidad de hostigamiento sexual equivalente o *quid pro quo*. Esta forma de hostigamiento se materializa "cuando el sostenimiento o el rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo." Indulac v. Central General de Trabajadores, 207 DPR 279, 308 (2021) (nota al calce omitida); Rosa Maisonet v. ASEM, 192 DPR 368, 381 (2015). Mientras, el tercer inciso se refiere a la modalidad de hostigamiento sexual por ambiente hostil. Esta modalidad "sucede cuando la conducta sexual para con un individuo tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante, hostil u ofensivo." [18] En cuanto a la carga probatoria para establecer un caso *prima facie* de hostigamiento

---

[18] Indulac v. Central General de Trabajadores, *supra* (cita depurada y nota al calce omitida); Rosa Maisonet v. ASEM, *supra*, a la pág. 381; Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117, 131-132 (1990).

sexual por ambiente hostil, debe probarse que ha ocurrido más de un incidente de conducta sexual ofensiva. Esto, pues conforme ha manifestado nuestro Tribunal Supremo "[u]n acto aislado o un mero "piropo", aunque pudiera ser no deseado, no origina una causa de acción bajo esa modalidad. De ahí que se diga que el hostigamiento por ambiente abusivo se caracteriza por su multiplicidad." In re Robles Sanabria, 151 DPR 483, 500 (2000).

Ahora, nuestro Máximo Foro judicial ha reconocido varias excepciones al requisito de la multiplicidad de actos. Así, por ejemplo, en Indulac v. Central General de Trabajadores, *supra*, validó el despido, a raíz de una primera falta cometida, de un empleado que colocó una cámara de video oculta en la oficina de una compañera de trabajo. Al hacerlo resaltó que "la conducta desplegada por el recurrido fue tan lesiva que atentó contra la paz y el buen orden de la empresa. En ese sentido, hubiera constituido una imprudencia por el patrono esperar su reiteración para separar al empleado del establecimiento."

Por su parte, en Rosa Maisonet v. ASEM, *supra*, el único incidente de hostigamiento sexual fue en "una nalgada sonada en la cadera." El Tribunal Supremo indicó que el referido acto "es grave por sí solo. El hecho de que ese acercamiento sexual provino de un Superior hacia una empleada de menor jerarquía institucional es aún más grave y sin duda justifica la sanción máxima impuesta[.]" *Id.*, a la pág. 392.[19]

*B.*

La Ley Núm. 81 de 30 de agosto de 1991, mejor conocida como la *Ley de Municipios Autónomos de Puerto Rico*, (Ley 81-1991) autoriza a los municipios a implementar un sistema autónomo para la administración del personal municipal. 21 LPRA Sec. 4551.[20] Conforme a esta autoridad,

---

[19] Para ejemplos adicionales, véase UPR Aguadilla v. Lorenzo Hernández, 184 DPR 1001 (2012) y Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643 (1994).

[20] Cabe mencionar que el referido estatuto fue derogado por la Ley Núm. 107 de 13 de agosto de 2020, según enmendada, mejor conocida como el *Código Municipal de Puerto Rico*, 21 LPRA sec. 7001 *et seq*. No obstante, los hechos que dieron lugar al presente asunto sucedieron durante la vigencia de la pieza legislativa derogada.

mediante la Ordenanza Núm. 27, Serie 2001-2002, aprobada el 7 de mayo de 2000, el recurrente adoptó el Reglamento de Conducta y Medidas Disciplinarias del Municipio de San Juan (Reglamento de Conducta). Dicho reglamento, en su Artículo 4.01, dispone lo siguiente:

> Cuando la conducta de un funcionario o empleado no se ajusta a las normas establecidas en este Reglamento, la Autoridad Nominadora impondrá la acción correctiva o la medida disciplinaria que corresponda. […]

> Este Reglamento establece las normas de conducta que fomentan la honestidad y el buen comportamiento en un ambiente mutuo respeto para lograr una sana administración. Además, establece las estructuras y normas requeridas para mantener el orden y la disciplina en el ámbito laboral. Artículo 4.01, Reglamento de Conducta, pág. 16.

En lo pertinente, el referido reglamento establece las siguientes normas de conducta prohibida con las correspondientes medidas disciplinarias aplicables:

1. Insubordinación, tal como:

   […]

   e. No cumplir con las ordenes ejecutivas o administrativas emitidas por el Alcalde o sus Representantes Autorizados (Autoridad Nominadora).

   […]

6. Comunicarse verbalmente o por escrito de forma grosera y/o irrespetuosa o usar lenguaje ofensivo, amenazante o indecoroso en el trabajo.

   […]

23. Conducta o actuación que constituya hostigamiento sexual, tal como:

   a. Favores sexuales – solicitar u ofrecer explícita o implícita [sic] favores sexuales.

   b. […]

   c. Verbal – Hacer comentarios sobre atributos físicos o utilizar epítetos, chistes o preguntas de índole sexual, difundir rumores, insinuaciones o hacer comentarios acerca de la vida social o sexual de alguna persona.

   d. […]

   e. Ambiente de trabajo – Promover un ambiente de trabajo sexualmente ofensivo, amenazante o intimidante.

f.  Represalias – Tomar acción contra algún empleado que presente una querella de hostigamiento sexual, participe de alguna investigación relacionada, o que se oponga a acciones discriminatorias relacionadas.

[…]

56. En cualquier otra conducta impropia o en detrimento de los mejores intereses del Municipio, se aplicarán medidas disciplinarias de acuerdo a su importancia y gravedad, aun cuando la infracción no haya sido especificada en esta Tabla de Normas de Conducta y Medidas Disciplinarias. Reglamento de Conducta, Anejo B, págs. 1-3 y 6.

De otra parte, por virtud de la Orden Ejecutiva Núm. JS 007, Serie 2001-2002, firmada el 24 de agosto de 2001, el Municipio estableció el Reglamento sobre Hostigamiento Sexual en el Empleo del Municipio de San Juan (Reglamento sobre Hostigamiento Sexual). El propósito de esta normativa fue establecer la política pública y el procedimiento de querellas de hostigamiento sexual en el empleo dentro del Municipio. A continuación, reproducimos las disposiciones del Reglamento sobre Hostigamiento Sexual más relevantes a la controversia que hoy atendemos:

I.  Artículo IV: Declaración de Política Pública

El Municipio de San Juan desaprueba y prohíbe firme y enérgicamente el hostigamiento sexual en el empleo. El Municipio de San Juan no tolerará ningún tipo de conducta que intencional o no intencionalmente resulte en hostigamiento sexual. Esta conducta es una práctica ilegal y discriminatoria por razón de sexo que resulta indeseable y que atenta contra el principio constitucional que establece que la dignidad del ser humano es inviolable. Esta conducta es contraria a las normas de comportamiento correcto, cortés y respetuoso que rigen en el servicio público y está reñida con la norma invariable que prevalece en el Municipio de San Juan de garantizar la igualdad de oportunidades en el empleo sin discrimen por razón de raza, color, sexo, nacimiento, edad, origen, condición social, ideas políticas o religiosas, impedimento físico o mental o condición de veterano. Es pues una conducta altamente censurable, ajena a los mejores intereses de todos los componentes del Municipio porque afecta la productividad, eficiencia, armonía y satisfacción en el ambiente de trabajo y la seguridad del personal.

El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimiento de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual. Dicho hostigamiento puede proceder tanto de supervisores como de compañeros de trabajo o subordinados. Así como de personas no empleadas por el Municipio de San Juan sobre las cuales se ejerza supervisión o control. Además, el hostigamiento sexual puede ocurrir entre personas de géneros opuestos como entre personas del mismo género.

[…]

Todo el personal **y en especial el que se desempeña como supervisor** tiene la responsabilidad ineludible, de no aceptar excepciones, de prevenir, desalentar, evitar y repudiar desde su inicio enérgicamente cualquier práctica de hostigamiento sexual. Los supervisores o funcionarios de confianza del Municipio de San Juan, para cumplir afirmativamente con el deber de mantener su lugar de trabajo libre de hostigamiento sexual e intimidación, tienen que demostrar que tomaron acción correctiva inmediata y apropiada ante la situación[.] Reglamento sobre Hostigamiento Sexual, Artículo IV, a la pág. 5 (énfasis suplido).

II. Artículo VI: CONDUCTA QUE CONSTITUYE HOSTIGAMIENTO SEXUAL

1. Se entiende que constituye hostigamiento sexual en el empleo, cuando se da una o más de las siguientes circunstancias:

   a. Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

   b. Cuando el sometimiento o rechazo a dicha conducta por parte de la persona afectada se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

   c. Cuando esa conducta tiene el efecto o propósito de interferir con el desempeño del trabajo de esa persona.

   d. Cuando esa conducta crea un ambiente de trabajo intimidante, hostil u ofensivo hacia un individuo.

2. Los actos no bienvenidos que podrían constituir hostigamiento sexual, varían. Mientras más severo o grave sea el acto no deseado, menos persistencia podría requerirse para que constituya hostigamiento sexual. Esta conducta puede manifestarse más no se limita a las siguientes formas:

   a. lenguaje obsceno de naturaleza sexual, como chistes de mal gusto, comentarios sugestivos o denigrantes, epítetos, piropos, insinuaciones o proposiciones de naturaleza sexual[;]

   b. […]

   c. carteles, dibujos, caricaturas o fotografías obscenas u ofensivas[;]

   d. […]

   e. invitaciones de mal gusto[.]

   […]

3. Para determinar si la alegada conducta constituye o no hostigamiento sexual en el empleo, se considerará la

totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de la acción se hará basada en los hechos de cada caso en particular, bajo el criterio de una persona razonable. Reglamento sobre Hostigamiento Sexual, Artículo VI, a las págs. 7-8.

III.     ARTÍCULO XII- DETERMINACIÓN FINAL

1. A partir de las determinaciones y recomendaciones a que se lleguen, luego de celebrada la vista administrativa, la Autoridad Nominadora o su Representante Autorizado, tomará una decisión final de la querella no más tarde de diez (10) días a partir de la fecha en que reciba las determinaciones y recomendaciones de la vista administrativa.

2. De determinarse que hubo hostigamiento sexual en el empleo se sancionará a la persona querellada. Las medidas disciplinarias podrán incluir la suspensión de empleo y sueldo o la destitución, según se dispone en el Reglamento de Conducta y Acciones Disciplinarias del Municipio de San Juan. Reglamento sobre Hostigamiento Sexual, Artículo XII, a la pág. 14.

C.

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial aplicable a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión. 3 LPRA Sec. 9671. Sobre el alcance de esta revisión, la Sección 4.5 de la LPAU establece que las determinaciones de hechos de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente, mientras que las conclusiones de derecho serán revisables en todos sus aspectos.[21]

En nuestro ordenamiento jurídico ha sido la norma general por años que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si

---

[21] 3 LPRA Sec. 9675.

estas actuaron arbitraria o ilegalmente. Ahora bien, recientemente nuestro Tribunal Supremo, en consideración del lenguaje específico de la Sección 4.5 de la LPAU, adoptó la normativa establecida por el Tribunal Supremo de los Estados Unidos en Loper Bright Enterprises v. Raimondo, 603 US 369 (2024). Así pues, concluyó que la interpretación de las leyes es una tarea inherente de los tribunales. En virtud de ello, enunció que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos y no guiarse por la deferencia automática que se aplica a estas decisiones. Vázquez v. Consejo de Titulares, 2025 TSPR 56, 215 DPR _____.

En el citado caso el Tribunal Supremo de Puerto Rico expresó que:

> [A]l ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. . . . Sin embargo, tales interpretaciones constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Íd.* (cita depurada).

En ese sentido, nuestro más alto foro enfatizó que "[…] los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, **los tribunales no tienen que darle deferencia <u>a la interpretación de derecho</u> que haga una agencia simplemente porque la ley es ambigua."** (énfasis en el original)

No obstante, es importante destacar que en el citado caso nuestro más alto foro no modificó la evaluación y respetó las determinaciones de hechos alcanzadas por las agencias. Así pues, prevalece todavía la norma de que, para impugnar la razonabilidad de la determinación administrativa, es necesario que la parte recurrente señale la prueba en el récord que reduzca o menoscabe el peso de la evidencia que obra en el expediente administrativo. Domínguez v. Caguas Expressway Motors, 148 DPR 387, 397-398 (1999) (citando a Hilton Hotels v. Junta Salario Mínimo, 74 DPR 670,

686 (1953)). La misma debe ser suficiente como para que pueda descartarse en derecho la presunción de corrección de la determinación administrativa, no pudiendo descansar en meras alegaciones. Com. Vec. Pro-Mej., Inc. v. JP, 147 DPR 750, 761 (1999). El criterio rector para examinar una decisión administrativa es la razonabilidad de la actuación de la agencia recurrida. González Segarra et al. v. CFSE, 188 DPR 252, 276 (2013).

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. IFCO Recycling v. Aut. Desp. Sólidos, 184 DPR 712 (2012) (citando a Empresas Ferrer, *supra*, a la pág. 264).

Expuesta la normativa jurídica aplicable, procedemos a disponer del presente recurso.

-III-

Según expusimos, el Municipio señala que la CASP erró al sustituir la medida disciplinaria de destitución de empleo impuesta al recurrido por una sanción de suspensión de empleo y sueldo por diez (10) días laborables, así como al ordenar la reinstalación del señor Santiago Ruiz a su puesto en el Municipio. En adición, aduce que la CASP incidió al determinar que el recurrido no cometió ciertas conductas prohibidas por disposiciones reglamentarias.

Por su parte, en su comparecencia ante nos el recurrido afirma que el error cometido por la CASP no consiste en la aplicación errónea del derecho, tal como señala el recurrente, sino en las determinaciones de hechos plasmadas. A su vez, reclama que en el caso no se cumplió con el

estándar de prueba, pues la evidencia desfilada sobre el alegado hostigamiento sexual no fue clara, robusta y convincente.

Con el fin de justipreciar los distintos argumentos sometidos en contra y a favor de la decisión recurrida, nos dimos a la tarea de evaluar minuciosamente el expediente administrativo. Estudiado el mismo, coincidimos con la **mayoría** de los señalamientos levantados por el Municipio, más no todos. Para explicar adecuadamente nuestra decisión, estimamos pertinente atender primero el segundo error señalado por el recurrente. En este, reclamó que el recurrido infringió todas las normas señaladas inicialmente y que la CASP eliminó.

Las normas específicas que el Municipio indica el CASP erróneamente determinó no se infringieron son:

1. Norma de Conducta Prohibida Núm. 1 (e): **No cumplir con las órdenes ejecutivas** o administrativas emitida por el Alcalde o sus Representantes Autorizados (Autoridad Nominadora).

2. Norma de Conducta Prohibida Núm. 6: **Comunicarse verbalmente o por escrito de forma** grosera y/o **irrespetuosa o usar lenguaje** ofensivo, amenazante, o **indecoroso** en el trabajo.

3. Normas de Conducta Prohibida Núm. 23 (a) y (f): Conducta o actuación que constituya hostigamiento sexual, tal como:

   a. Favores sexuales – solicitar y ofrecer explícita o implícita [sic] favores sexuales.

   f. Represalias - Tomar acción contra algún empleado que presente una querella de hostigamiento sexual, participe de alguna investigación relacionada, o se oponga a acciones discriminatorias relacionadas.

4. Norma de Conducta Prohibida Núm. 56: En caso de cualquier otra conducta impropia o en detrimento de los mejores intereses del Municipio se aplicarán medidas disciplinarias de acuerdo a su importancia y gravedad, aún cuando la infracción no haya sido especificada en la Tabla de Normas de Conducta y [M]edidas Disciplinarias.

Una lectura de la primera de estas normas nos permite apreciar que la conducta de hostigamiento sexual laboral que se determinó el recurrido desplegó, sin lugar a duda, infringe las normas de conducta establecidas por la Autoridad Nominadora. Ello así, pues el reglamento a través del cual

el Municipio de San Juan estableció su política pública de rechazo al hostigamiento sexual y les prohibió a sus funcionarios incurrir en dicha conducta, fue adoptado mediante la Orden Ejecutiva Núm. JS 007, Serie 2001-2002, firmada el 24 de agosto de 2001.

En ese sentido, el señor Santiago Ruiz, al cometer actos de hostigamiento sexual en el empleo, incurrió en conducta prohibida por disposiciones adoptadas mediante una orden ejecutiva aprobada. **Más aun, conforme a la referida orden ejecutiva, el recurrido era, en su carácter de Gerente de Recursos Humanos, la persona con "la responsabilidad ineludible, de no aceptar excepciones, de prevenir, desalentar, evitar y repudiar desde su inicio enérgicamente cualquier práctica de hostigamiento sexual."[22]** Siendo así, no tan solo el señor Santiago Ruiz incumplió con las disposiciones de una orden ejecutiva, sino que incumplió con las obligaciones inherentes a su posición, lo que resulta, además de ser más gravoso aún, indicativo de la conducta proscrita de insubordinación. Consecuentemente, es razonable colegir que infringió la Norma de Conducta Prohibida Núm. 1 (e).

Respecto a la Norma de Conducta Prohibida Núm. 6, la CASP razonó que era inaplicable por cuanto la conducta sancionada a través de dicha norma, estaba ya atendida por la Norma de Conducta Prohibida Núm. 23, la cual proscribe la conducta de hostigamiento sexual. Colegimos que no es correcta dicha interpretación.

La Norma de Conducta Prohibida Núm. 23, según le fue formulada al recurrido, atiende aspectos específicos de hostigamiento sexual, mientras que la Norma de Conducta Prohibida Núm. 6 consiste en comunicación, verbal o escrita, que sea irrespetuosa, ofensiva o indecorosa. No es correcto determinar, que la conducta imputada por hostigamiento sexual excluye la conducta proscrita consistente en comunicaciones verbales y escritas que

---

[22] Artículo IV, Reglamento de Hostigamiento Sexual, a la pág. 4.

sean ofensivas e indecorosas. Ciertamente, el hostigamiento sexual laboral en el presente caso se cometió a través de comunicaciones verbales y escritas cuya naturaleza fue indecorosa y ofensiva para la señora Rodríguez Heredia. De manera que, a través de sus actos, el señor Santiago Ruiz infringió las Normas de Conducta Prohibida Núm. 6 y 23 al mismo tiempo. Siendo así, ambas conductas no son mutuamente excluyentes como lo interpretó la CASP.

Ahora, la CASP razonó correctamente al determinar que no se infringieron las Normas de Conducta Prohibida Núm. 23(a) sobre hostigamiento sexual en la forma de solicitar favores sexuales. Sobre esto, el Municipio alude que, al hacerle los comentarios a la señora Rodríguez Heredia de que pensaba en ella "con lo que tenía en el pantalón" y de que "quería tener algo por fuera", una clara alusión a una relación extramarital, el recurrido implícitamente le solicitó favores sexuales. No compartimos su interpretación.

Más bien, sus comentarios sumamente impropios y lascivos recaen en la Norma de Conducta Prohibida Núm. 23 (c) de hostigamiento sexual en la forma verbal, definida como "[h]acer comentarios sobre atributos físicos o utilizar epítetos, chistes o preguntas de índole sexual, difundir rumores, insinuaciones o hacer comentarios acerca de la vida social o sexual de alguna persona,"[23] y en la Norma de Conducta Prohibida Núm. 6 que proscribe "[c]omunicarse verbalmente o por escrito de forma grosera y/o **irrespetuosa** o lenguaje ofensivo, amenazante o **indecoroso** en el trabajo." *Íd.*, pág. 1. En ese sentido, no surgen del expediente acciones o comentarios del señor Santiago Ruiz que hayan constituido en procurar favores sexuales de parte de la señora Rodríguez Heredia de forma que pueda concluirse que infringió la Norma de Conducta Prohibida Núm. 23(a).

---

[23] Reglamento de Conducta, Anejo B, pág. 3,

Por otra parte, en cuanto a la Norma de Conducta Prohibida Núm. 23 (f) sobre hostigamiento sexual en el empleo en la forma de represalias, resaltamos que ésta se constituye por, "[t]omar acción contra algún empleado que presente una querella de hostigamiento sexual, participe de alguna investigación relacionada, o que se oponga a acciones discriminatorias relacionadas." *Íd*., pág. 3.

Según surge del expediente ante nos, el propio recurrido, en la declaración jurada que prestó el 30 de septiembre de 2019, como parte del proceso investigativo realizado por el Municipio de San Juan sobre las imputaciones en su contra, atestiguó, y citamos en lo pertinente, que, "[e]l 16 de septiembre de 2019[,] al notar que la conducta irrespetuosa de la [empleada] Rodríguez Hereida [sic], hacia mi persona continuaba[,] decidí solicitarle a mi supervisora que dialogara con dicha empleada para que modificara su conducta."[24]

Lo anterior se corrobora mediante la declaración jurada prestada el 3 de octubre de 2019 por su supervisora, Carmen Dolores Rivera Casanova, en la que esta manifestó, y citamos, que "[e]l Sr. Jesús Santiago me expresó y **solicitó que intercediera por [é]l ante la empleada Evelyn Rodríguez Heredia para que [é]sta desistiera de su reclamación en su contra y retirase la querella presentada**."[25] De hecho, el propio señor Santiago Ruiz, en su recurso de apelación ante la CASP arguyó que las alegaciones de la señora Rodríguez Heredia se debían a una querella que él hizo ante la señora Rivera Casanova.[26]

En ese sentido, es razonable colegir que tanto la queja de parte del recurrido en contra de la señora Rodríguez Heredia, cuyo comportamiento fue razonablemente previsible por ser, a todas luces, producto de las insinuaciones indecorosas y no correspondidas de las que fue objeto, fue un

---

[24] SUMAC TA, Entrada Núm. 10, Anejo *Copia Expediente Administrativo 4*, a la pág. 74.
[25] *Íd*., a la pág. 72 (énfasis nuestro).
[26] *Íd*., Entrada Núm. 1, Apéndice 1, a la pág. 1.

intento de mancillar la credibilidad de ésta. Asimismo, el acercamiento hecho a su supervisora para solicitar su intervención fue un esfuerzo para empañar el procedimiento disciplinario y evitar las sanciones o consecuencias respectivas. Consecuentemente, colegimos que el recurrido infringió la Norma de Conducta Prohibida Núm. 23 (f).

Por último, cabe mencionar que la CASP no erró al concluir que es inaplicable al presente caso la Norma de Conducta Prohibida Núm. 56. Ello toda vez que, como vimos, la antedicha norma es un tipo de cláusula residual que se refiere a conductas impropias o en detrimento de los mejores intereses del Municipio de San Juan, por las cuales el organismo municipal podrá imponer medidas disciplinarias aun cuando la conducta no conste especificada en el Reglamento de Conducta como proscrita. Ya que las conductas imputadas e incurridas por el recurrido se encuentran atendidas por Normas de Conducta Prohibida específicas, no es de aplicación una norma que atienda conductas no establecidas como proscritas en el Reglamento de Conducta.

En resumidas cuentas, resolvemos que, contrario a lo determinado por la CASP, Santiago Ruiz sí infringió las Normas de Conducta Prohibidas número 1(e), 6 y 23(f).

Atendido el segundo señalamiento de error, pasemos a discutir la primera comisión de error señalada por el Municipio. En síntesis, el recurrente plantea que la CASP incidió al dejar sin efecto la destitución del recurrido y variar la sanción disciplinaria aplicable por una de suspensión de empleo y sueldo por diez (10) días laborables. **Le asiste la razón**.

En su dictamen, la CASP entendió que la sanción aplicable al señor Santiago Ruiz, por incurrir en conducta de hostigamiento sexual laboral, era la correspondiente a la de una primera falta o infracción, conforme al Reglamento de Conducta. Si bien es cierto que la referida pieza reglamentaria dispone que un empleado se expone a una suspensión de

empleo y sueldo por diez (10) días laborables por cometer por primera vez actos constitutivos de hostigamiento sexual laboral, nuestro ordenamiento jurídico ha establecido que un patrono no requiere esperar a que el empleado repita la conducta proscrita para destituirlo de su puesto.

En contrario, en reiteradas ocasiones nuestro Más Alto Foro judicial ha establecido que existen actos o incidentes de tal seriedad o agravio, que basta con una sola ocurrencia para justificar una sanción tan drástica como el despido o terminación de empleo. *Véase* Indulac v. Central General de Trabajadores, *supra*; Rosa Maisonet v. ASEM, *supra*; UPR Aguadilla v. Lorenzo Hernández, *supra*; Delgado Zayas v. Hosp. Int. Med. Avanzada, *supra*.

De entrada, resalta el hecho de que mientras incurría en hostigamiento sexual laboral en contra de la señora Rodríguez Heredia, el recurrido fungió como Gerente de Recursos Humanos. Sin duda alguna, ello incrementa la gravedad y seriedad de la conducta cometida por el señor Santiago Ruiz. Como funcionario principal del área de Recursos Humanos, el recurrido tenía el deber de, precisamente, prevenir el hostigamiento sexual y promover un ambiente laboral libre de tan gravosa modalidad de discrimen. Sin lugar a duda, era el funcionario llamado a proteger a sus compañeros de trabajo de cualquier situación de hostigamiento sexual. En ese sentido, resulta forzoso concluir que las circunstancias en las que ocurrieron los actos de hostigamiento sexual son lo suficientemente gravosos como para justificar la destitución del recurrido del ambiente laboral en el Municipio de San Juan.

Además, es forzoso concluir que el presente caso no se trató de un solo acto de hostigamiento sexual. Conforme a lo resuelto por la CASP, se determinó, a través del testimonio de la señora Rodríguez Heredia, el recurrido provocó varios incidentes en los que se comportó de forma indecorosa y le realizó comentarios de índole sexual a esta. Particularmente,

el señor Santiago Ruiz le comentó impúdicamente a la señora Rodríguez Heredia que pensaba en lo que ella tenía debajo de su pantalón; le insinuó su deseo de sostener una relación extramarital; le manifestó que le gustaba; y que era tan linda como Fatmagul. También, le envió mensajes de texto y le regaló chocolates, así como un bolígrafo. Sobre los mensajes de texto, destacamos que el señor Santiago Ruiz admitió remitirlos en la declaración jurada que prestó el 30 de septiembre de 2019 y atestiguó que "[y]o tenía la autorización de la Sra. Evelyn Rodríguez Heredia para remitirle mensajes y ella me había indicado que le agradaban[,] que eran bonitos[,]"[27] aunque rechazó que los mensajes fueran de naturaleza vulgar o explícito sexual.

Ciertamente, la conducta exhibida por el recurrido no se limitó a un solo acto impropio, sino que comprende varios incidentes. Siendo ello así, como arriba mencionamos, son lo suficientemente gravosos como para justificar la destitución del recurrido del ambiente laboral en el Municipio de San Juan, sin que se apliquen medidas correctivas previas a la cesantía.

Finalmente, cabe destacar que en su alegato ante nos, el señor Santiago Ruiz niega haber cometido hostigamiento sexual laboral en contra de la señora Rodríguez Heredia y aduce que la CASP erró al sostener que el Municipio probó que incurrió en esa conducta. Sin embargo, el recurrido no aduce hechos ni produce evidencia suficiente que nos muevan a resolver distinto en cuanto a que incurrió en actos de hostigamiento sexual en contra de la señora Rodríguez Heredia, sino todo lo contrario. No puede descansar en meras alegaciones Com. Vec. Pro-Mej., Inc. v. JP, *supra*, a la pág. 761. De la totalidad del expediente ante nos surge evidencia suficiente para sostener la determinación tanto de la CASP como del Municipio de San Juan de que el recurrido incurrió en hostigamiento sexual en el empleo, y ello no habiendo sido derrotado por el recurrido, no nos corresponde variar la

---

[27] SUMAC TA, Entrada Núm. 10, Anejo *Copia Expediente Administrativo* 4, a la pág. 74.

antedicha determinación. <u>Graciani Rodríguez v. Garage Isla Verde</u>, 202 DPR 117 (2019), (citando a <u>Otero v. Toyota</u>, 163 DPR 716, 728 (2005)).

-IV-

Por todos los fundamentos antes expuesto, se **revoca** la determinación recurrida. A su vez, reinstalamos la medida disciplinaria impuesta originalmente por el recurrente y, así, ordenamos la destitución del recurrido de su puesto en el Municipio de San Juan.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones